459 F.2d 348
 80 L.R.R.M. (BNA) 2252, 68 Lab.Cas. P 12,602
 James D. HODGSON, Secretary of Labor, United States
Department of Labor, Appellant,
v.
UNITED STEELWORKERS OF AMERICA, AFL-CIO-CLC (District 19),
William J. Hart, Intervenor.
 No. 71-1357.
 United States Court of Appeals,
Third Circuit.
 Argued March 23, 1972.
Decided April 28, 1972.
 
 Thomas J. Press, U. S. Dept. of Justice, Civil Div., Washington, D. C., for appellant.
 Michael Gottesman, Bredhoff, Barr, Gottesman, Cohen & Peer, Washington, D. C., for appellee.
 Paul A. Simmons, Hormell, Tempest, Simmons, Bigi & Melenyzer, Monongahela, Pa., for intervenor.
 Before SEITZ, Chief Judge, and ADAMS and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 We are asked to decide in this case whether a union member's complaint concerning nominating procedures employed by the international union was timely filed with the Secretary of Labor in accordance with 29 U.S.C. Sec. 482(a).[1] If the complaint were filed within the time limits provided by the Act, we must then consider whether the district court erred in permitting an incumbent union officer to intervene in the proceedings.[2]
 
 
 2
 *****
 
 
 3
 * * *
 
 
 4
 In preparation for an election to fill offices of the United Steelworkers of America [International], including the office of District Director of District 19 of the International, nominating meetings were conducted between November 8 and December 9, 1968, by the various local unions comprising the District. To appear on the ballot as a candidate for District Director, the International Constitution stipulates that a potential nominee must secure the nominations of eight local unions within the District.[3]
 
 
 5
 Adam Wisniewski sought to be a candidate for the post of District Director of District 19, but having secured the nominations of only five, rather than eight, local unions, his name did not appear on the ballot for the February 11, 1969 International election. In a letter dated December 27, 1968, Wisniewski lodged a protest with the Secretary-Treasurer of the International, alleging violations by the local unions of the International's Election Manual in the securing of nominations from the local unions. In response to the letter, the International appointed a Hearing Commission, and on January 3, 1969, Wisniewski attended the hearing which the Commission conducted. The Commission denied Wisniewski's protest, and the International's Executive Board then informed Wisniewski, on January 20, 1969, that they had adopted the Commission's findings.
 
 
 6
 Following the February 11, 1969, election, Wisniewski attempted to reassert his claim by filing a post-election protest with the International's Executive Board on March 9, 1969,[4] and by additionally challenging the result of the election for District Director.[5] The Secretary-Treasurer of the International responded on April 1, 1969, advising that Wisniewski's challenge to the nomination procedure had already been decided by the Executive Board, and, in essence, that no further union remedy was available to Wisniewski. Following the issuance on April 18, 1969, by the International Tellers of their final report on the election, Wisniewski once more, by a letter dated May 2, 1969, complained to the Secretary-Treasurer of the International concerning both the procedure followed for nomination of a candidate for District Director and the outcome of the election based on the absence of Wisniewski's name from the ballot. On May 14, 1969, Wisniewski was informed that his protest could not be considered at such a late date. The answer to Wisniewski concluded, "In short, you invoked and exhausted the remedies available under the International Constitution many months ago."
 
 
 7
 On May 29, within one month of this last item of correspondence, Wisniewski filed a complaint with the Secretary of Labor, reiterating the claims previously rejected by the International. After the Secretary determined that probable cause existed to believe that a violation of the Act had occurred, the Secretary filed a complaint in the district court naming the International as defendant. William Hart, the incumbent District Director of District 19, was permitted by the court to intervene as a party defendant, pursuant to Fed.R.Civ.P. 24. The Secretary and the International both filed motions for summary judgment. The district court granted the International's motion on the basis that Wisniewski did not file his complaint with the Secretary within the statutory one-month period. The Secretary has appealed.
 
 
 8
 Preliminarily we note that the International asserts, and the Secretary does not dispute, the mandatory nature of the one-month period set forth in section 482(a). Shultz v. Local 1291, 429 F. 2d 592 (3d Cir. 1970). If the individual complainant fails to file a protest with the Secretary within one month of the exhaustion of his union remedies, an action filed in the district court must be dismissed. The question for us therefore is whether Wisniewski's letter of May 29, 1969 was filed with the Secretary within one month of the exhaustion of his union remedies.
 
 
 9
 The Secretary views the International's letter of May 14, 1969 as the final step in Wisniewski's exhaustion of union remedies, and thus contends that Wisniewski's letter of May 29, 1969 to the Secretary was well within the one month time limit prescribed in section 482(a). In order to decide whether the Secretary's position is correct, we must examine the International Constitution to determine if avenues were open within the union, after the International Tellers filed their final report, to resolve a protest regarding allegedly improper nomination procedures. If they were, then Wisniewski's complaint to the Secretary might have been timely filed; if not, the district court properly granted the International's motion for summary judgment.
 
 
 10
 Our inquiry begins with Article V, section 6 of the International Constitution [V-6], which sets forth the procedure actually followed by Wisniewski when he originally filed his protest with the International. V-6 delineates the method by which protests concerning nominations may be considered by the union. The protest must be received by the International Secretary-Treasurer not later than 45 days prior to the election. V-6 further states that the Executive Board has the power to decide "the question of whether any violation is sufficient to require invalidation of a particular Local Union nomination. * * * The Local Union nominations which are not invalidated shall remain in effect." (emphasis added). While never stating specifically that V-6 is the exclusive method for dealing with contested nominations, the International Constitution nowhere else provides for disturbing a nomination qua nomination. The Secretary concedes in his brief that the procedures mandated by V-6 were "exhausted by complainant upon the denial of his protest by the International Executive Board on January 20, 1969."
 
 
 11
 To avoid the conclusion that Wisniewski's union remedies were completely exhausted on January 20, 1969, the Secretary relies on certain other provisions of the International Constitution and the legislative history of the Labor-Management Reporting and Disclosure Act.
 
 
 12
 V-21 states that "All contests in connection with the votes of any Local Union must be filed with the International Tellers not later than ten (10) days after the date of election, by a member of the Local Union whose vote is contested." (emphasis added). This section is inapplicable to Wisniewski's situation for two reasons. First, Wisniewski's post-election protest to the International was not sent until March 9, 1969-26 days after the February 11th election. Second, the italicized portion of V-21 makes reasonably clear that this section was intended to make relief available to a member of a local union who, for whatever reason, was either not permitted to vote or was allowed to vote under protest. Since Wisniewski's complaint relates only to the absence of his name from the ballot, and because he did not file a protest within 10 days of the election, the Secretary may not rely on Section V-21 to prevent the one month period from running.
 
 
 13
 The International Constitution requires the International Tellers to file a final report no later than May 1st of each election year. Such a report was filed on April 18, 1969. V-19 provides that "all contests growing out of the [International Tellers'] report shall be filed with the International Executive Board, which body shall have power to decide the contest." The Secretary of Labor contends that Wisniewski's protest grew out of the Tellers' report. It would be reasonable to assume that a contest could grow out of the report only if the Tellers themselves had some power to decide the dispute, for if the Tellers did not possess the power to change the result, the contest must have arisen because of some other decision-making process. An analysis of the report issued by the Tellers on April 18, 1969, is helpful in determining the extent of their power. A number of votes were invalidated on procedural grounds, e. g., returns received prior to the official election date and more votes received than members in good standing. Other votes were voided because of irregularities in the conduct of the election itself. There is no indication in the International Constitution or the Tellers' Report that the Tellers did or could consider nomination disputes. In fact, it is fair to say that the only group capable of dealing with protests such as that filed by Wisniewski would be the International Executive Board when the procedure set out in V-6 is followed.
 
 
 14
 Nonetheless, the Secretary asserts that, based on the legislative history of section 482(a), Congress did not want to interfere with the internal union election procedure, and therefore section 482(a) should be construed as a post-election federal remedy. See, e. g., Wirtz v. Local 153, 389 U.S. 463, 472-473, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968); Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). The legislative policy referred to by the Secretary, however, would not conflict at all with a holding that Wisniewski's union remedies were exhausted after (1) the International Executive Board denied his protest on January 20, 1969, or (2) he received the April 1, 1969 letter from the International informing him that the Union had already considered and denied his claim, or (3) the International Tellers filed their report on April 18, 1969. Clearly any action taken by the Secretary based on either (2) or (3) would not constitute "unnecessary governmental intrusion into internal union affairs," Wirtz v. Local 153, supra, 389 U.S. at 472, 88 S. Ct. at 648, because the election process would have been concluded by the time the Secretary could act. Likewise, had Wisniewski filed his complaint with the Secretary immediately after the January 20th denial, the Secretary could have awaited the outcome of the election before filing his action in the district court. Wisniewski's delay in filing until after he had received his third denial from the Union, on May 14, 1969, could serve no purpose other than to lengthen unnecessarily the time required to resolve any conflict between union procedure and the federal law.
 
 
 15
 The Secretary's final justification for Wisniewski's dilatory behavior lies in the alleged complexity of Article V of the International Constitution. As we noted above, only a few of the 26 sections of Article V have any applicability whatsoever to a nomination dispute. When this fact is coupled with the April 1, 1969, letter Wisniewski received from the International telling him, in no uncertain terms, that his relief within the union was limited to the V-6 procedure that had already been completed, we can find no justification for the Secretary's position that Wisniewski's remedies were not exhausted until May 14, 1969, the date Wisniewski received his third denial.[6] Because Wisniewski could not have had a union remedy available later than April 18, 1969, the day the Tellers' report was filed, and because Wisniewski's letter of protest to the Secretary of Labor was filed on May 29, 1969-clearly beyond the one month period provided by the statute-the district court properly granted the International's motion for summary judgment.[7]
 
 
 16
 Accordingly, the judgment of the district court will be affirmed.
 
 
 
 [1]
 29 U.S.C. Sec. 482 stipulates in pertinent part
 "(a) A member of a labor organization -(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body,
 may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 401 * * *"
 
 
 [2]
 Holding that the complaint was not timely filed would obviate the need for considering the second point because the grant of summary judgment for the defendant would be proper, and the intervention of the incumbent union officer merely academic
 
 
 [3]
 Each local union was entitled to nominate one candidate for each International Office and one for District Director
 
 
 [4]
 On the same day, Wisniewski sent a copy of his protest letter to Mr. William Kane, Area Director of the United States Department of Labor. In reply, Mr. Kane informed him that the Department of Labor would not consider his union remedies exhausted until Wisniewski filed a protest following the publication of the International Tellers Report and that protest was denied
 
 
 [5]
 By this means, Wisniewski hoped to turn his pre-election protest into one challenging the final outcome of the election
 
 
 [6]
 Thus we are not confronted with a union member who is so confused by a complex and ambiguous union constitution that he continues to attempt to invoke union remedies beyond actual exhaustion because of his uncertainty whether the remedies apply to him. Cf. Wirtz v. Great Lakes District, 240 F.Supp. 859 (N.D.Ohio 1965)
 
 
 [7]
 Because of this disposition, we need not consider the intervention question posed by the Secretary. See, Hodgson v. Carpenters Resilient Flooring Local Union No. 2212, 457 F.2d 1364, at 1368 (3d Cir. 1972)