**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**LOCAL 514, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Defendant.**

No. 82–1104–Civ.

United States District Court, M.D. Pennsylvania.

Nov. 8, 1984.

**414**

James W. Walker, Asst. U.S. Atty., Scranton, Pa., T. Timothy Ryan, Jr., Sol. of Labor, Washington, D.C., Marshall H. Harris, Regional Sol., Edward T. Ellis, U.S. Dept. of Labor, Philadelphia, Pa., for plaintiff.

Ira H. Weinstock, Harrisburg, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

The Secretary of Labor commenced this action pursuant to 29 U.S.C. § 482(a) on September 3, 1982, seeking a declaration that the election held by the defendant on June 5, 1982, is void for the offices of Financial Secretary, Recording Secretary, Treasurer, Conductor, two Trustees, and five delegates to the Keystone District Council. The court has jurisdiction pursuant to Section 402(b) of the Act (29 U.S.C. § 482(b)). The Secretary has advanced three issues: (1) Section 401(e) of the Act was violated in that a member in good standing was improperly denied the right to be a candidate at the nominating meeting held May 18, 1982; (2) Section 401(g) was violated in that Union funds were used to promote the candidacy of a particular

slate of candidates running for office in the election which took place on June 5, 1982; and (3) the Union's membership list was made available to only one slate of candidates in violation of Section 401(c). In its answer, the Union/defendant asserted as an affirmative defense that the complaint filed by the Secretary of Labor in this case was untimely because the complaining party had failed to file his complaint with the Secretary of Labor within one month after the alleged violations by the Union as required by 29 U.S.C. § 482. On September 24, 1982, the Union filed a motion to dismiss asserting the issue of untimeliness. This motion was held in abeyance pending a long but unsuccessful attempt by the parties to agree on a Stipulation of Facts.[1] Depositions were then taken of John Helfrich and Edward Blazejewski, Sr., employees of the defendant, on October 19, 1983. On January 20, 1984, the Union filed a motion for summary judgment and brief in support thereof, dated January 30, 1984. Plaintiff filed an opposition brief, dated February 15, 1984, along with a cross motion for summary judgment. On February 22, 1984, defendant filed a reply brief and on March 6, 1984, plaintiff filed its reply brief. A joint stipulation of uncontested facts was filed by the parties on March 28, 1984. A conference was held April 23, 1984, and the parties agreed that four additional depositions should be taken. Accordingly, the depositions of John Zimnicky, Stanley Soboleski, Donald Purvin and Thomas Froncek were taken and supplemental briefs were filed, the last on September 19, 1984. The motion and cross motion for summary judgment are now ripe for disposition. The motion of the defendant will be granted in part and the plaintiff's motion will be denied.

## DISCUSSION

On January 1, 1982, Locals 150, 401, 414 and 768 merged into Local 514. The defendant, Local 514, governed by the Consti-

---

**1.** Initially, the parties believed they could agree on a Stipulation of Facts and present the matter as a case stated for determination by the court without a hearing. Apparently, because there was disagreement as to certain factual allegations, the parties decided to seek summary judgment pursuant to Rule 56, Fed.R.Civ.P.

tution of the United Brotherhood of Carpenters and Joiners of America, held nominations for the election of its local officers on May 18, 1982. On June 5, 1982, Local 514 conducted the election for the local offices of President, Vice-President, Recording Secretary, Financial Secretary, Treasurer, Conductor, Warden, and three Trustees to the District Council, Greater Wilkes-Barre Labor Council and the Building Trades Council.[2] Section 57(G) of the International Constitution provides, *inter alia,* that all protests directed to the conduct of nominations, or election procedures, may be appealed to the General President, in writing, within thirty (30) days of the date of the election. Decisions of the General President shall be final.

John Zimnicky, by letter dated June 3, 1982, addressed to William Konyha, General President of the United Brotherhood of Carpenters and Joiners of America, protested the conduct of the nominations for that election, specifically the decision of the Election Committee for Local 514, declaring one John Gadomski ineligible to run for office on the ground that he was not a member in good standing. Following an investigation, the General President denied Mr. Zimnicky's protest by letter dated June 8, 1982. By letter dated June 21, 1982, and addressed to the General President, Mr. Zimnicky protested a pre-election mailing made by Edward Blazejewski, Sr., Business Representative, on behalf of one slate of candidates. By letter of June 29, 1982, the General President found no merit in Mr. Zimnicky's June 21, 1982 letter of protest. On June 27, 1982, Mr. Zimnicky appealed to the Carpenters' General Executive Board regarding the denial of his protest letter of June 3, 1982. Mr. Zimnicky was advised on July 1, 1982, that in accordance with the Constitution and Laws of the International, the General President's decision was final.

On July 6, 1982, it appears Zimnicky attempted to file a complaint with the Secretary of Labor by hand-delivering a letter to the Office of the Labor Management Services Administration (LMSA) office listed in the Wilkes-Barre phone book. Unbeknownst to him, the LMSA had closed its Wilkes-Barre office in June of 1982. In attempting to locate a Department of Labor office in which to file the complaint, Zimnicky met two investigators for the Wage and Hour Division of the Department of Labor, which office was in Wilkes-Barre. He offered the complaint to one of the investigators who looked it over and then referred Zimnicky to the NLRB Office in Philadelphia. Zimnicky mailed the complaint to the NLRB, which, by letter dated July 9, 1982, referred it by mail back to the defunct LMSA Office in Wilkes-Barre. Eventually, it was forwarded to the LMSA Office in Philadelphia, arriving on July 15, 1982. The Secretary investigated the complaint, treating it as if it were filed on July 6, 1982, the date it was hand-carried to the defunct LMSA Office in Wilkes-Barre.

### I. The Timeliness of Mr. Zimnicky's Original Complaint

Regarding the timeliness issue, the Union asserts that the requirement of § 482(a) that a member of a labor organization "file a complaint with the Secretary within one calendar month of the violation" is mandatory and that the Secretary of Labor does not have standing to bring an action unless a member of the Union has filed a valid complaint challenging the Union election. The Union contends the complaint should not be deemed received for purposes of the Act until July 15, 1982, thus exceeding the one-month statutory limitation period. The Secretary maintains, however, that the complaint should be considered filed as of July 6, 1982, when Mr. Zimnicky attempted to hand-deliver it to the defunct LMSA office in Wilkes-Barre. Because Mr. Zimnicky did all he could to file his complaint on July 6, 1982, but was thwarted from reaching the proper agency due to circumstances beyond his control, the Secretary requests the court to consider the com-

---

**2.** The Secretary seeks to set aside the election only of the officers who purportedly benefited from the Union's improper actions.

plaint as having been filed for purposes of Title IV on the date Mr. Zimnicky made contact with Wage and Hour investigators in the Wilkes-Barre Federal Building. This contact would be within the one-calendar-month time limit set forth in § 402(a).[3]

■ Section 482(a) provides:

(a) A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers)....

The Third Circuit Court of Appeals in *Hodgson v. United Steelworkers of America*, 459 F.2d 348, 350 (3d Cir.1972), explained that the one-month filing period is mandatory. That, "[i]f the individual complainant fails to file a protest with the Secretary within one month of the exhaustion of his union remedies, an action filed in the district court must be dismissed." *Id.* See also *Donovan v. Local 126, International Brotherhood of Electrical Workers*, 552 F.Supp. 429, 430 (E.D.Pa.1982) (citing *Hodgson*); *Hall v. Marshall*, 476 F.Supp. 262, 268 (E.D.Pa.1979) (citing *Hodgson*); *Shultz v. United Steelworkers of America*, 319 F.Supp. 1172, 1173 (W.D.Pa.1970). If a union member has not filed a valid complaint, the Secretary lacks authority to proceed under § 482 to seek a new election. See *Donovan v. Local 126*, 552 F.Supp. at 431.

■ A complaint is deemed "filed" with the Secretary upon "receipt." *See Wirtz v. Local Union 169, International Hod Carriers, Building and Common La-* borers' *Union of America*, 246 F.Supp. 741, 750 (D.Nev.1965). Merely placing the document in the mail would not constitute filing under the statute. However, in this case, Mr. Zimnicky actually tendered the complaint to a Department of Labor employee who gave him erroneous information as to where the complaint should be sent. It is true that the Wage and Hour employee was not the proper official to receive the complaint but if he had agreed to accept the complaint and forwarded it to the Labor Management Services Administration office in Philadelphia, the Secretary would be hard put to challenge the timeliness of the filing. Interestingly enough, if Zimnicky had mailed the complaint on July 6, 1982, to the Wilkes-Barre office, instead of hand-carrying it, it no doubt would have been forwarded to the Philadelphia office. Moreover, Zimnicky could not have received the June 8, 1982, notice of the denial of his appeal until several days after it was mailed (Fed.R.Civ.P. 6(e) allows for 3 additional days for mail delivery of a notice.) which would have given sufficient time for the notice to reach Philadelphia prior to the expiration of the one-month limitation. Recognizing the broad remedial purposes of the Act, the efforts made by Mr. Zimnicky to file the complaint, the unexpected development of the closing of the Wilkes-Barre office where service could have been effected, the lack of prejudice to defendant, and the opinion of the Secretary that the complaint was filed within the one-month statutory requirement, I conclude that the attempted delivery of the complaint to an employee of the Secretary in the Wilkes-Barre office constituted a filing within the contemplation of § 402(a) of the Act, 29 U.S.C. § 482(a). Thus, the issue that Mr. Gadomski was improperly denied of his right to be a candidate remains viable.

The protest involving the alleged illegal use of a union mailing list was made on June 21, 1982, and denied on June 29, 1982. This would fall easily within the one-month filing period and is, thus, not subject to dismissal.

**3.** The Secretary further contends that the limitations period should not be applied more strictly than that set forth in subsection (b), which has been held not to be jurisdictional and may be extended either by equitable considerations or by agreement of the parties.

## II. The Campaign Mailing on behalf of the Blazejewski Slate

The Secretary contends that Union funds were used in violation of Section 401(g) of the Act (29 U.S.C. § 481(g)) because campaign literature promoting the candidacy of a particular slate of candidates was mailed by a Union employee. The Joint Stipulation of Uncontested Facts and the depositions reveal that Edward F. Blazejewski, Sr., is the Business Representative for Keystone District Council in Area No. 1. He was not a candidate in the disputed election but his son, Edward F. Blazejewski, Jr., was a candidate for the office of President of Local 514 and headed a slate of candidates hereinafter referred to as the Blazejewski slate. Mr. Blazejewski, Sr., requested Eugene Ercolani, Financial Secretary of Local 514 and a member of the Blazejewski slate, to arrange for the mailing and paid him $125.00, as well as supplying the stamps, envelopes and campaign literature. The $125.00 payment was specifically intended to reimburse Mr. Ercolani for the time he spent performing the mailing. The depositions disclose that it was the Union's policy to mail campaign literature to the members for any candidate provided the candidate brought the material and envelopes with return addresses to the Union office and agreed to pay the person who did these mailings at time and a half of a carpenter's wages. Plaintiff does not deny the existence of this policy but contends that a mailing required prior approval of the membership. In addition, each member is entitled to examine the Union's mailing list but cannot copy the names and addresses. The mailing policy is included in the nomination and election procedures which are sent to each local before any election. It is to be read aloud at the Keystone District Council meetings prior to the election and by the Recording Secretary at local meetings and, according to Recording Secretary Froncek, was personally read by him to the body of members prior to the election at issue here. This mailing procedure had been utilized by other members in previous elections.[4]

The Blazejewski slate mailings were performed by John Helfrich, the apprentice coordinator for Area No. 1 of the Keystone District Council, and not by Mr. Ercolani. Moreover, Helfrich did not receive the $125.00 paid to Ercolani by Blazejewski, Sr. Mr. Helfrich receives his salary at an hourly wage rate of $14.99 per hour for a forty-hour week and it is paid from a fund created by contributions from contractors at the rate of five cents per hour for every hour worked by a union member. Mr. Helfrich is expected to work from 8:00 A.M. to 4:30 P.M. each day but is also required to work four hours each Monday night at an apprentices' meeting. Because he must work these four additional hours each Monday night, he is permitted four hours of "comp time" each week which may be taken at any time during his normal forty-hour work week and may be used for personal purposes Mr. Helfrich stuffed, sealed, stamped and addressed approximately 500 letters for the Blazejewski slate using the Secretary's ledger book provided by Mr. Ercolani. At his deposition he testified that it took him 8 hours to do this work and that he did it by using "comp time" he had accumulated although some was done before his work day started, during his lunch break, and on Saturday, his day off. This testimony, on its face, would indicate that Helfrich used his own comp or personal time in carrying out the mailing and, consequently, no union funds were implicated so as to constitute a violation of Section 401(g). The Secretary resists this conclusion on two grounds: (1) the "comp time" was part of Mr. Helfrich's job benefit package along with his wages for a forty-hour week, and (2) prior to his deposition, Mr. Helfrich had signed a statement asserting that he addressed the envelopes "during the day when I wasn't busy with apprenticeship committee business" which, the Secretary argues, at least created a genuine issue as to a material fact which

---

**4.** The mailing policies previously existing at the locals which merged into Local 514 may have varied.

would preclude entry of summary judgment for the defendant.

The Secretary offers no plausible explanation, except to state the conclusion, as to why comp time should be considered part of the job benefit package and, further, how this interpretation would constitute use of Union's funds. I reject both approaches. It is true that the prohibitions of the Act refer to indirect as well as direct contributions from the Union to candidates for preparation of campaign literature as well as to minimal amounts spent on behalf of the Union, *Shultz v. Local Union 6799, United Steelworkers of America*, 426 F.2d 969 (9th Cir.1970), but no one has disputed the factual allegation that the Monday night obligation relieved Helfrich from four hours of work during the week which he could utilize in any way, in or out of the Union office. This was his option to use in any manner he desired and, according to his deposition, he acted voluntarily in effectuating the mailings. Indeed, he stated that he would have done the same thing for other candidates if he had the time. This cannot be equated with use of Union funds simply by labeling it as part of a job package.

As to the alleged inconsistency between Mr. Helfrich's deposition testimony and his prior written statement, it should be pointed out that this is the only factual dispute advanced by either side that would militate against summary judgment. In that regard, both sides conducted extensive discovery and also entered into a Factual Stipulation in an effort to flush out all possible factual controversies. The factual conflict, according to the Secretary, is between Helfrich's deposition testimony that he acted on his "comp time" and his recorded statement that it was done during the day when he wasn't busy with apprenticeship committee business. Yet, it is apparent that there was no reason why under his "comp time" entitlement he couldn't perform any personal and nonwork-related task during the day when he wasn't doing his usual apprenticeship duties. Whether

he was voluntarily stuffing envelopes for a candidate or writing a letter to a friend would not make it something other than "comp time" if that is what he considered it to be. If a trial were held, I would not consider these facts as creating an inconsistency which would warrant a rejection of Mr. Helfrich's deposition testimony. The argument that Mr. Helfrich may not have accumulated "comp time" because the Monday night classes were not consistently held is unpersuasive. This testimony was vague, remote and incidental, and would not warrant a finding that sufficient "comp time" to mail the Blazejewski literature had not been accumulated. Aside from the above, the Secretary has not represented to the court, despite extensive discovery, that any further competent evidence would be forthcoming on this issue. Consequently, I am satisfied that no genuine issue of material fact exists as to this issue and summary judgment will be entered for defendant.

### III. Use of the Membership List

■ Finally, the Secretary maintains that the Union violated Section 401(c) of the Act (29 U.S.C. § 481(c)), which provides that labor organizations must refrain from discrimination in favor of or against any candidate with respect to the use of lists of members. While plaintiff does not seem to contest that a policy existed which allowed each member to inspect the membership list at the local and council meetings, he points to the deposition testimony of Stanley Soboleski,[5] the candidate who defeated Mr. Blazejewski, Jr., and was elected President, and by Mr. Donald Purvin, the elected Vice-President, who testified that there were not any announcements at any of the pre-election union meetings regarding the availability of the union membership lists. This testimony conflicts with that of the Recording Secretary, Mr. Froncek, who testified that he did make the announcements. The Secretary maintains that by allowing the use of a membership list for the Blazejewski slate mailings without advising the other candi-

---

5. Mr. Soboleski testified that he could have availed himself to a mailing by the Union in the 1982 election but chose not to do so. Mr. Zim-

nicky also admitted that he understood a mailing list would be made available to a candidate who requested it.

dates of the availability of the list, the Union breached Section 402(c). It is difficult to perceive from the record whether the alleged availability of the membership lists was well known by the membership even if a specific announcement had not been made. Consequently, there appears to be a factual dispute on this issue and the effect it may have had on the election. *See Schultz v. Radio Officers' Union of United Telegraph Workers,* 344 F.Supp. 58, 67–68 (S.D.N.Y.1972). As previously mentioned, if the Union discriminated in favor of or against any candidate with respect to the use or inspection of membership lists, then this would contravene Section 401(c). This issue cannot be decided on the present record and summary judgment would not be appropriate.