*Hilda L. SOLIS, Secretary Labor,
United States Department of
Labor, Appellant,

John Johnson, Jr.; Mickey Ostrowski,
Intervenor–Plaintiffs in D.C.,

v.

LOCAL 234, TRANSPORT
WORKERS UNION.

No. 09–1143.

United States Court of Appeals,
Third Circuit.

Argued Sept. 21, 2009.

Filed Nov. 2, 2009.

* Amended pursuant to F.R.A.P. 43(c)

Michael P. Abate [Argued] Michael F. Hertz, Laurie Magid, Thomas M. Bondy, Christopher C. Fonzone, Michael S. Blume, Virginia A. Gibson, U.S. Department of Justice, Washington, DC, for Appellant.

Bruce Bodner [Argued] Kaufman, Coren & Ress, P.C., Philadelphia, PA, for Appellee.

Claiborne S. Newlin, Meranze & Katz, Philadelphia, PA, for Intervenor–Plaintiff.

Peter D. DeChiara Cohen, Weiss and Simon LLP, New York, NY, for Amicus Appellee.

Before: BARRY, FISHER and JORDAN, Circuit Judges.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

The United States Secretary of Labor appeals an order from the United States District Court for the Eastern District of Pennsylvania dismissing the Secretary's complaint under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 *et seq,* for lack of subject matter jurisdiction. The District Court determined that John Johnson's administrative complaint, underlying the Secretary's LMRDA enforcement action, had not been timely filed and that, therefore, the Secretary's effort to seek relief for Johnson against Local 234 of the Transit Workers Union ("TWU")[1] could not proceed. For the following reasons, we will reverse the judgment and remand for further proceedings.

## I. Background

Throughout April 2007, Local 234 accepted candidate slates for its upcoming election of officers. Johnson, a candidate for president of the Local, submitted a slate nominating Mickey Ostrowski for two different positions, Recording Secretary and Secretary Treasurer.[2] On May 7, 2007, Local 234's election committee sent Ostrowski a letter informing him that he

---

1. For ease of reference, we will sometimes refer to Local 234 as "the Local." We will also refer to it at times as "the Union," recognizing, however, that the Local and TWU are not one and the same.

2. While it is not entirely clear from the record, it appears that Johnson nominated Ostrowski for both positions on a single candidate slate. (App. at B60.)

had been nominated for two positions and that he had to choose which to pursue, because multiple candidacies are forbidden by the Union. When Ostrowski nevertheless submitted acceptance letters for both positions, the committee informed him that he had violated TWU's nomination procedures and was thus ineligible to run for office. The committee then informed Johnson that, as a result of Ostrowski's disqualification, he no longer had a full slate of candidates and his entire slate was disqualified under TWU's election rule prohibiting partial candidate slates.

Article XV, Section 7, of the TWU constitution establishes procedures for members pursuing election protests. It reads, in relevant part, as follows:

> Any member in good standing who believes that he/she has been improperly denied the opportunity to be a candidate for an elective

> office or position, or who believes that an election in which he/she was a candidate was improperly conducted, may file a complaint with his/her Local Executive Board. If he/she is dissatisfied with the action of the Local Executive Board on his/her complaint, he/she may, within 15 days thereafter, or within 30 days after filing his/her complaint with the Local Executive Board if the Board has not taken final action thereon within that

> time, file an appeal to the International Union. . . .

(App. at B9.)

Evidently relying on that provision, Johnson and Ostrowski filed a complaint on May 30, 2007 with the Local Executive Board (the "pre-election protest"), challenging both the disqualification of Ostrowski as a candidate and the resulting disqualification of the entire Johnson slate. On June 29, 2008, the Executive Board rejected the pre-election protest but advised Johnson and Ostrowski that they could appeal the decision to the International Union under Article XXII of the TWU constitution.[3] Johnson, for himself and on behalf of his slate of candidates, then filed a timely appeal with TWU's International Secretary Treasurer, who forwarded the appeal to the International Committee on Appeals ("ICA"). The ICA denied Johnson's appeal on September 19, 2007.[4]

Local 234 held its election on September 28, 2007, without Johnson as a candidate. Afterward, on October 9, Johnson filed another protest with the Executive Board (the "post-election protest"). When the Executive Board failed to act on that protest, Johnson filed another appeal with the International Union on November 7, 2007. The ICA also failed to act on his appeal, and, on January 15, 2008, Johnson filed an administrative complaint with the Secre-

---

**3.** Article XXII, Section 1, of the TWU constitution provides, "[t]he Committee on Appeals shall have the power to decide all appeals from Local Unions and their members in any matter relating to the application of this Constitution or the By–Laws of the Local Union." (App. at B 10.)

**4.** On October 9, 2007, Johnson appealed the ICA's unanimous decision to the International Executive Council ("IEC"), pursuant to Article XXII, Section 1 of the TWU constitution. The IEC only considers appeals of unanimous ICA decisions at TWU International Conven-

tions. (Appellant's Op. Br. at 9 n. 1.) The next TWU International Convention is not until 2010, and, accordingly, the IEC has not acted on Johnson's appeal. (*Id.*) Johnson's final appeal to the IEC is irrelevant to the present analysis, however, because, as the District Court noted, "it is clear that TWU has taken no action on the appeal [to the International Convention] . . . [and thus,] under the LMRDA, the Johnson Slate had four months from the date it invoked its internal remedies [May 30, 2007] to file a complaint with the Secretary." (App. at A14.)

tary of Labor, under Title IV, § 402, of the LMRDA, 29 U.S.C. § 482, alleging that Local 234 had violated the LMRDA by disqualifying his slate of candidates.[5]

Title IV of the LMRDA allows aggrieved union members to file administrative complaints directly with the Secretary of Labor, provided that the member has satisfied the exhaustion requirement contained in § 402 of the statute, which states:

(a) A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 [of the LMRDA]. . . .

29 U.S.C. § 482(a).

If the member remains aggrieved after exhausting the remedies available through the union, the Secretary is required to investigate the member's complaint. *Id.* § 482(b). Upon a finding of "probable cause to believe that a violation [of the LMRDA] has occurred and has not been remedied," the Secretary must bring a civil enforcement action on behalf of the member against the union. *Id.* Following statutory protocol, the Secretary investigated Johnson's complaint, found probable cause to believe that there had been a violation of the LMRDA, and commenced the present enforcement action on behalf of Johnson against Local 234 in the United States District Court for the Eastern District of Pennsylvania.

Local 234 responded by filing a motion to dismiss, arguing lack of subject matter jurisdiction due to the timing of Johnson's administrative complaint to the Secretary. On November 12, 2008, the District Court granted the motion to dismiss. The Court determined that Johnson's filing of his administrative complaint with the Secretary was untimely under the LMRDA and hence could not be a predicate for the Secretary's enforcement action against the Union. According to the Court, because the "TWU constitution does not expressly give its members the opportunity to file both pre-election protests and post-election protests," Johnson had just one opportunity to file a protest, which he took when he filed his pre-election protest. (App. at A 13.) Having thus concluded that Johnson's post-election protest was invalid, the District Court held that Johnson's pre-election protest must serve as the pertinent point of reference for determining whether Johnson's administrative complaint to the Secretary was timely under the LMRDA. (*Id.* at A12–A13.) The Court alternatively held that, even if Johnson's post-election protest had been valid under the TWU constitution, our precedent requires that the timeliness of an LMRDA administrative complaint be measured from a union member's pre-election protest and not a later post-election protest. (*Id.* at A11.) When measured from the date of Johnson's pre-election protest, Johnson's administrative complaint was, the Court said, invalid because it was untimely under § 482(a) and therefore could not serve as the foundation for the Secretary's enforcement action against TWU. The District Court accordingly dis-

---

**5.** The LMRDA provides that, in union elections, "a reasonable opportunity shall be given for the nomination of candidates, and every member in good standing shall be eligible to be a candidate and to hold office. . . ." 29 U.S.C. § 481(e).

missed the complaint for lack of subject matter jurisdiction.[6] (*Id.*) The Secretary's timely appeal followed.

## II. Discussion

■ The District Court had jurisdiction over this matter pursuant to 29 U.S.C. § 482 and 28 U.S.C. § 1331. Our jurisdiction arises under 28 U.S.C. § 1291. We exercise plenary review over a district court's dismissal for lack of subject matter jurisdiction. *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000); *Reich v. Local 30, Int'l Bd. of Teamsters,* 6 F.3d 978, 981–82 (3d Cir.1993) (*"Teamsters, Local 30"*).

■ The Secretary argues that the District Court's dismissal of her enforcement action was error because Johnson's post-election protest is allowed by the text of the TWU constitution and, hence, constitutes an available internal union remedy that can serve as the relevant event for determining the timeliness of Johnson's administrative complaint under the LMRDA. Specifically, the Secretary argues that "[t]he TWU constitution nowhere prohibited Johnson from filing his post-election protest," and that "longstanding precedent dictates that union complaint procedures must be liberally construed in favor of a complaining union member." (Appellant's Op. Br. at 17.) She further contends that, as long as the post-election protest is valid under the TWU constitution, nothing in the LMRDA or in our case law prohibits a union member from filing a complaint with the Secretary based on a post-election protest simply because a pre-election protest had also been filed. (*Id.* at 24.) The Union, of course, responds that the District Court's interpretation of the TWU constitution is correct and that Johnson's post-election protest was invalid and cannot support the Secretary's enforcement action. (Appellee's Ans. Br. at 13–16.)

Congress enacted the LMRDA to remedy abuses in union elections without departing from the "longstanding congressional policy against unnecessary governmental interference with internal union affairs." *Hodgson v. Local 6799, United Steelworkers of Am.,* 403 U.S. 333, 338, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971) (citation omitted) (*"Steelworkers, Local 6799"*). Congress thus included in the Act a requirement that "union members protesting the conduct of elections exhaust their internal union remedies before complaining to the Secretary...." *Id.* at 336, 91 S.Ct. 1841; *see also* 29 U.S.C. § 482(a). In an early case involving the LMRDA, the Supreme Court held that "any interpretation of the exhaustion requirement must reflect the needs of rank and file union members—those people the requirement is designed ultimately to serve." *Steelworkers, Local 6799,* 403 U.S. at 340, 91 S.Ct. 1841. The Court admonished that "members should not be held to procedural niceties while seeking redress within their unions...." *Id.* at 341 n. 6, 91 S.Ct. 1841. We have likewise emphasized that internal union protest procedures are "designed ultimately to serve rank and file union members," and that "any ambiguities must be liberally construed in favor of the complaining member." *Donovan v. Local 126, Int'l Bhd. of Elec. Workers,* 728 F.2d 610, 613 (3d Cir.1984) (citations omitted) (*"Elec. Workers, Local 126"*). Our sister circuits have similarly held that when a rank and file union member is faced with internal union pro-

---

**6.** It is uncontested that Johnson's administrative complaint would have been timely under the LMRDA had it been measured from his post-election protest and not his preelection protest.

test procedures that may be unclear or ambiguous, the member need only do what is "reasonable under the circumstances." *See, e.g., Dole v. United Auto. Aerospace and Agric. Implement Workers of Am.*, 970 F.2d 1562, 1568 (6th Cir.1992) (finding that union members' efforts at obtaining internal resolution of their complaints were "reasonable under the circumstances" and thus sufficient to meet § 402's exhaustion requirements); *Stevens v. Nw. Ind. Dist. Council, United Broth. of Carpenters*, 20 F.3d 720, 733 (7th Cir.1994) (noting that, while "failure to properly exhaust should lead a federal court to stay its hand until exhaustion can be completed," the exhaustion requirement must nevertheless be a "reasonable" one); *Donovan v. Sailors' Union of the Pac.*, 739 F.2d 1426, 1428 (9th Cir.1984) (holding that a union member's protest was "reasonable under the circumstances," and thus timely under the LMRDA, where the union was unclear about its own protest procedures).

■ In evaluating whether, under the LMRDA, a union member has properly exhausted remedies available within the union, courts look to the union's constitution. *See Hodgson v. Dist. 19, United Steelworkers of Am.*, 459 F.2d 348, 350 (3d Cir.1972) ("*Steelworkers, District 19*") ("In order to decide whether the Secretary's position is correct, we must examine the International Constitution to determine if avenues were open within the union...."). Thus, we must review the relevant provision from the TWU constitution. Article XV, Section 7 of that charter governs election protests. As earlier noted, it provides, in part, that

> [a]ny member in good standing who believes that he/she has been improperly denied the opportunity to be a candidate for an elective office or position, or who

believes that an election in which he/she was a candidate was improperly conducted, may file a complaint with his/her Local Executive Board.

(App. at B9.)

Working from this provision, the District Court held that "the TWU constitution, in Article XV, Section 7, gives its union members [only] one opportunity to file a complaint. That complaint may be either pre-election or post-election." (App. at A13.) The Court concluded that the Secretary had failed to demonstrate that Johnson filed a valid post-election protest, because Johnson had already filed a pre-election one. It appears, then, that the District Court interpreted the clause stating that "a member may file a complaint" as meaning that a member may file one and only one election protest. While the Secretary concedes that this is one "plausible interpretation of the text of the relevant constitutional provision" (Appellant's Op. Br. at 20), she argues that it is not the only plausible interpretation, and we agree. The same language can reasonably be understood to mean that a member is entitled to file at least one protest, not only one protest. In other words, the provision is ambiguous.

In interpreting the TWU constitution as it did, the District Court did not heed the mandate that ambiguous constitutional provisions must be "liberally construed in favor of the complaining member." *Elec. Workers, Local 126*, 728 F.2d at 613. When confronted by the ambiguity in Article XV, Section 7, Johnson was only required to interpret the language in a way that was reasonable under the circumstances. *See Donovan*, 739 F.2d at 1428 (holding that a union member's method of election protest was "reasonable under the circumstances" and thus constituted a "reasonable[ ] attempt[ ]" to invoke his union remedies); *cf. Steelworkers, Local*

*6799,* 403 U.S. at 341, 91 S.Ct. 1841 ("[C]ourts should impose a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question."). His actions demonstrate that he interpreted the provision as permitting an aggrieved union member to file both a pre-election and a postelection protest, which is a legitimate interpretation for at least three reasons. First, as already mentioned, the words "a complaint" need not mean "just one election protest." Second, the provision itself does not specify whether protests must be filed pre- or post-election. And third, moving from this particular provision to the constitution as a whole,[7] nowhere does the TWU constitution bar a union member from filing a post-election protest because he has already filed a pre-election protest.[8] Thus, the language of the TWU constitution itself, ambiguous though Article XV, Section 7 is, supports Johnson's interpretation as reasonable, particularly in light of the rule that union constitutions are to be liberally construed in favor of rank and file members like Johnson.

Local 234 argues, however, that to interpret the TWU constitution as Johnson did and as the Secretary suggests "would permit the serial filing of identical post-election complaints by different members of a disgruntled election slate over an extended period of time with each successive complaint restarting the [LMRDA] clock," which would be "absurd." (Appellee's Ans. Br. at 15.) The District Court was persuaded by that argument. It said, "[t]he Secretary seems to advance a reading [of the TWU constitution] under which union members may file a protest, pursue appeals, and then refile the same protest...." (App. at A12.)

In adopting the Union's argument, the District Court failed to recognize that there are legitimate reasons why a labor organization may want to provide its members with more than one opportunity to raise the same or similar protests. For example, a union may wish to prioritize the goal of member satisfaction over the goal of internal efficiency, and so afford members more than one opportunity to be heard. A union may also decide that a member could legitimately buttress a pre-election protest with additional information available only after the contested election. In addition, a union may want to give itself a second opportunity to consider a protest, particularly when the protest has been developed and refined by further evidence.

Local 234 invokes principles of res judicata to explain why its one-and-only-one protest rule is required. Just as courts should not have to hear a complaint twice, Local 234 argues that unions should not be burdened with repetitive election protests. (Appellee's Ans. Br. at 15 n. 14 (noting that "res judicata precludes the re-litigation of claims ... already raised and adjudicated....").) *That is not a sound analogy,* however, as internal union dispute

---

7. Borrowing from longstanding rules of statutory construction, we note that "in the event the words and provisions are 'ambiguous—that is, whether they are reasonably susceptible of different interpretations,' we look next at the surrounding words and provisions and also to the words in context." *Dobrek v. Phelan,* 419 F.3d 259, 264 (3d Cir.2005) (*citing Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.,* 470 U.S. 451, 473 n. 27, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985)).

8. Nor does the LMRDA proscribe a union member's filing an administrative complaint with the Secretary based on a post-election protest just because the member has filed a preelection protest. Rather, the statute states without qualification that a union member "may file a complaint with the Secretary" after he has invoked his internal remedies. 29 U.S.C. § 482(a).

mechanisms do not implicate the public policy considerations behind the doctrine of res judicata. Courts operate on public funds for the benefit of the general public. Unions operate on the dues of their members and for the benefit of their members. Imposing a judicial model onto union dispute resolution would be at odds with "longstanding [ ] policy against unnecessary governmental interference with internal union affairs." *Steelworkers, Local 6799*, 403 U.S. at 338.

Moreover, the Union's hypothetical of an endless series of cloned complaints is not an adequate reason to deprive one of its members of the benefit of a reasonable interpretation of rights provided in the TWU constitution. There will be time enough to deal with the extreme case when and if it arises. For now, it is sufficient to note that Johnson's efforts to obtain redress are comfortably within the bounds of existing precedent. *See Usery v. Local Div. 1205, Amalgamated Transit Union*, 545 F.2d 1300, 1305–06 (1st Cir.1976) (considering an LMRDA challenge based on a post-election protest after finding that a union member had not exhausted his internal union remedies with his pre-election protest); *see also 3 Nat'l Lawyers Guild, Employee and Union Member Guide to Labor Law* § 13.36 (Elise Gautier ed. West 2008) (noting that "a preelection protest will normally not be either sufficient or necessary exhaustion. . . .").

■ There is another compelling reason why Johnson's postelection protest should be considered valid as a foundation for the Secretary's enforcement action. This Court has long held that, in the context of the LMRDA exhaustion requirement, a union's "failure to object" to a member's efforts to exhaust can be interpreted as "acquiescence or waiver." *Elec. Workers, Local 126*, 728 F.2d at 613. Our decision in *Elec. Workers, Local 126* shows how broadly a union's constitution should be read in favor of a protesting union member. In that case, a union member conceded that he had failed to exhaust his union's remedies when protesting an election and thus could not rely on his own protest to support an administrative complaint to the Secretary under the LMRDA. *Id.* at 612. However, another member from the same union, though he subsequently died, had fully exhausted the union's remedies with regard to an election protest. *Id.* The living union member sought to intervene in the deceased union member's protest and, based on the deceased member's protest, filed an administrative complaint with the Secretary. *Id.* After receiving the living member's notice of joinder, the union did not dispute his eligibility to intervene, nor did it dispute the timeliness of his intervention or of his administrative complaint. *Id.* Although the union's constitution was silent on the topic of joinder, the union later claimed that a member could not properly rely on another member's protest as the foundation for an administrative complaint under the LMRDA. *Id.* at 613. The district court agreed. We reversed and held that the union's failure to object amounted to a waiver of any argument that internal union remedies had not been exhausted. *Id.* We contrasted the case with the earlier case of *Steelworkers, District 19*, 459 F.2d 348 (3d Cir.1972), in which "the complaining member was told by the union in no uncertain terms that his relief within the union was limited to the procedures that had already been completed." *Elec. Workers, Local 126*, 728 F.2d at 613 (internal quotations omitted). Our decision in *Elec. Workers, Local 126* concluded that treating the union's failure to object as a waiver helped vindicate "the public policy of promoting untainted union elections. . . ." *Id.*

Johnson's post-election protest in this case was accepted without any objection from either Local 234 or the International Union. No one suggested that the pre-election protest had exhausted Johnson's remedies under the TWU constitution or that his post-election protest was improper. To the contrary, TWU's General Counsel later stated that there was "no defect" in Johnson's protest, and that "[t]he International does not take any position on the timeliness of the complaint before the Secretary of Labor." [9] (App. at B62.) Like the union in *Elec. Workers, Local 126*, the Union here failed to object to Johnson's post-election protest and, thus, waived any objection to the validity of that protest under its constitution. That result is especially justified because Johnson still would have had the time to file an administrative complaint with the Secretary based on his pre-election protest, if the Union had done something to inform him that his post-election protest was considered invalid.[10]

The Union contends, however, that, even if Johnson's post-election protest is treated as valid under the TWU constitution, our precedent requires that the timeliness of any LMRDA administrative complaint be measured from the date of a pre-election protest and not a subsequent post-election protest. That was also the District Court's alternative holding, based on its reading of our decisions in *Teamsters, Local 30* and *Steelworkers, District 19*. Yet,

those decisions do not support that conclusion.

In *Teamsters, Local 30*, the union's constitution expressly provided for both a pre-election protest procedure and a separate post-election protest procedure. 6 F.3d at 983–84. The aggrieved union member protested under the pre-election protest mechanism only. *Id.* The Secretary argued that the member "had exhausted his internal remedies for the purposes of [the LMRDA]" with that pre-election protest. *Id.* at 982. We agreed and held that, "given the . . . express, mandatory *pre*-election method [ ] of seeking redress of eligibility challenges . . .," the plaintiff had exhausted the applicable remedies available to him under his union's constitution. *Id.* at 983 (original emphasis). The District Court here correctly read *Teamsters, Local 30* to say that "pre-election protests may sufficiently exhaust the remedies available to trigger the statutory requirement." (App. at A10 (*citing Teamsters, Local 30*, 6 F.3d at 983).) But it then took the unwarranted step of concluding that, because preelection remedies may suffice as exhaustion in some cases, they must necessarily be the exhaustion point in all cases. That is not true. *Teamsters, Local 30* stands for the proposition that the timeliness of an LMRDA administrative complaint may be measured from a pre-election protest, as opposed to a postelection protest, depending on the union's constitution. Because the union constitution at issue in that case required union members

---

**9.** The Local contends that the comments of TWU's General Counsel were mis-characterized by the Secretary. Specifically, the Local asserts that the General Counsel's statement that "[t]he International does not take any position on the timeliness of the complaint" is "hardly a ringing endorsement of the Secretary's interpretation of the TWU constitution." (Appellee's Ans. Br. at 30.) Ringing or not, the statement appears to us to support the inference that, beyond acknowledging the

adequacy of Johnson's postelection protest, the International Union simply wanted to stay silent about the dispute. That does nothing to undermine the General Counsel's statement that there was no defect in Johnson's protest.

**10.** Johnson had until October 19, 2007, 10 days after he filed his post-election protest, to file a complaint with the Secretary based on his pre-election protest.

to protest nominations before an election, and the aggrieved union member protested through that mechanism, and not through a post-election mechanism, it was sound to view the pre-election protest as effective exhaustion, particularly since that view gave the broadest protection to the union member's opportunity to complain to the Secretary for relief. Unlike the constitution in *Teamsters, Local 30*, the TWU constitution does not require union members to bring an election protest before the election. Rather, the TWU constitution leaves open the possibility of both pre- and postelection protests. In the absence of an express and separate pre-election protest provision, the present case is clearly distinguishable from *Teamsters, Local 30*.

In *Steelworkers, District 19*, the union constitution similarly "delineat[ed] the method by which protests concerning nominations may be considered by the union." 459 F.2d at 350. The protest had to occur before an election; there was no postelection recourse for challenging nominations provided for in the constitution. *Id.* at 351. The Court, noting that the union's pre-election protest mechanism was exclusive and the "only [mechanism] capable of dealing with protests such as that filed by [the complaining union member]," held that the LMRDA administrative complaint had to be measured in reference to the pre-election protest and not an attempted post-election protest. *Id.* at 352. Again, Local 234 argues that *Steelworkers, District 19* stands for the proposition that LMRDA complaints must be measured from pre-election protests, and not post-election ones. (Appellee's Ans. Br. at 20–23.) Again, that reading is misguided. The constitution in Steelworkers, District 19 designated a pre-election procedure as the sole mechanism for addressing nomination grievances, while nothing in the TWU constitution requires union members to raise nomination protests through any

particular or exclusive method. In sum, the effort to draw from Teamsters, Local 30 and Steelworkers, District 19 a blanket requirement regarding exhaustion procedures under disparate union constitutions is unfounded and must be rejected.

█ If a union desires to receive all election protests before the election occurs, it may accomplish that end by saying so in its constitution. The union has both the opportunity and the burden of laying out such rules in clear and unambiguous language in its governing charter. The TWU constitution contains no such limitation. Moreover, neither the text of the LMRDA nor our precedent supports the narrow interpretation of the TWU constitution espoused by the District Court. Our decisions urge the opposite view. We reiterate today that ambiguous constitutional provisions must be construed broadly in favor of complaining union members, whose interpretations need only be reasonable under the circumstances. Johnson's interpretation of the TWU constitution was reasonable, and, therefore, his post-election protest constitutes an "available" union remedy under the LMRDA. Because Johnson's postelection protest was a valid exercise of an available union remedy, his subsequent administrative complaint to the Secretary was timely and the Secretary's LMRDA enforcement action based on that administrative complaint is jurisdictionally sound.

## III. Conclusion

For the foregoing reasons, we reverse the District Court's dismissal of the Secretary's complaint for lack of subject matter jurisdiction and remand the case for proceedings consistent with this opinion.