

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-21-2001

# USA v. Barrie

Precedential or Non-Precedential:

Docket 00-3839

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"USA v. Barrie" (2001). *2001 Decisions.* Paper 217.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/217

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 19, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3839

UNITED STATES OF AMERICA

v.

JANE DURA BARRIE,
a/k/a JANE WOTAY DURA,
a/k/a JANE WOTAY BARRIE
        Jane Dura Barrie,
        Appellant

On Appeal from the United States District Court
for the District of New Jersey
D.C. Criminal No. 99-cr-00541-2
District Judge: Honorable Harold A. Ackerman

Argued April 3, 2001

Before: SCIRICA, ROSENN and GIBSON,*
Circuit Judges.

(Filed: September 19, 2001)

_____
*The Honorable John R. Gibson, United States Court of Appeals for the
Eighth Circuit, sitting by designation.

Kenneth W. Kayser, Esquire (Argued)
P. O. Box 2087
Livingston, New Jersey 07039

Attorney for Appellant

Jessica Stein, Esquire (Argued)
George S. Leone, Esquire
Office of United States Attorney
970 Broad Street, Room 700
Newark, New Jersey 07102

Attorneys for Appellee

OPINION OF THE COURT

JOHN R. GIBSON, Circuit Judge:

The issue before us is whether the district court erred in enhancing Jane Dura Barrie's sentencing offense level by four levels for organizing or leading a criminal activity that involved five or more participants.[1] We hold that it did.

Jane Barrie pleaded guilty to knowingly conspiring to transfer identification documents and false identification documents knowing that such documents were produced without lawful authority, 18 U.S.C. S 371 and S 1028(a)(2) (1994). This charge arose from her involvement in a scheme to sell Social Security cards to a number of West African immigrants.

To obtain a valid Social Security card, the applicant must submit an SS-5 form and provide supporting documentation, such as a birth certificate or permanent resident alien card, to verify that the applicant is entitled to a card. A claims representative reviews the form and supporting documentation to verify the applicant's identity and entitlement to a Social Security card. The SS-5 form is forwarded to a data entry employee who inputs the

_____

1. Under the aggravating role guideline, a sentencing court must increase a defendant's offense level by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. S 3B1.1(a) (2000).

2

information into the Social Security Administration's mainframe computer. A Social Security number and card are then generated and sent to the applicant's address as listed on the SS-5 form.

Jane Barrie's daughter Yemma Barrie was employed by the SSA as a clerk typist; one of her duties was entering data from SS-5 forms into the computer. A periodic review revealed that she had processed seventy-three Social Security cards without corresponding SS-5 forms. Investigators discovered that a number of these cards corresponded with applications processed by claims representative Angela Lucas and that Lucas failed to verify the supporting documentation for these and other applications.

Together, Yemma Barrie and Lucas unlawfully issued over 100 Social Security cards. According to an investigation report made part of the record by the district court, Yemma Barrie produced seventy-nine cards and Lucas produced sixty-four. At sentencing, the court found that the activities of Jane Barrie, Yemma Barrie, and Lucas resulted in the issuance of at least 108 Social Security cards. All of the illegally generated cards, both replacement cards for existing Social Security numbers and new cards, were coded as authorized for employment.

Lucas was a friend of Jane Barrie's. They first met in 1991 when Jane Barrie had contact with her in connection with Social Security benefits Jane Barrie received after the death of her husband. Jane Barrie gave Lucas $200 for helping to issue the illegal Social Security cards.

Yemma Barrie gave written statements to investigators in which she admitted that she illegally generated Social Security cards without applications. She stated that she received no money and that she acted at the request of a "friend."

Investigators interviewed some of the recipients and would-be recipients of the Social Security cards at issue. Most of those interviewed indicated that Jane Barrie had approached them and offered them "clean" Social Security cards (i.e., cards that could be used to obtain employment) in exchange for money. Jane Barrie charged the recipients

3

approximately $200 to $600 per card. The individuals either filled out SS-5 forms or gave Jane Barrie their personal information. Jane Barrie then forwarded this information to Lucas and Yemma Barrie and asked them to generate the cards. Some paid Jane Barrie and received cards, others paid and received nothing, and others did not pay but still received Social Security cards. Some recipients indicated that Yemma Barrie had gotten them Social Security cards as a favor.

At sentencing, the district court referred to the presentence investigation report, which recommended a four-level increase in Jane Barrie's offense level for her role as an organizer or leader of a criminal activity that involved five or more participants. The court then read through all of U.S.S.G. S 3B1.1, along with most of the commentary. The court found that Jane Barrie solicited individuals to buy Social Security cards, that she forwarded SS-5 forms to Lucas and Yemma Barrie, and that although she needed Lucas and her daughter, Jane Barrie "ran the show" "in a very significant way." The court also found that the recipients of the cards were participants in the criminal activity because they had advance knowledge of the crime, had to execute SS-5 forms or provide personal information to Jane Barrie, and expected to receive clean Social Security cards, which the court characterized as the "proceeds" of the crime. The court made no finding on whether the criminal activity was "otherwise extensive."[2]

The base offense level for Jane Barrie's crime was 11. The district court's finding that there were more than 99 cards involved in the conspiracy increased the level by 9, and its finding that Jane Barrie was an organizer/leader increased the offense level by 4. The district court then reduced the offense level by 3 for acceptance of responsibility, resulting in a total offense level of 21. Since Jane Barrie's criminal history category was II, this meant a sentencing range of 41 to 51 months. The court sentenced her to 51 months in prison.

_____

2. The presentence report made no mention of whether the criminal activity was otherwise extensive. At the sentencing hearing, the government did not argue that the criminal activity was otherwise extensive.

4

We review for clear error the district court's factual determinations that Jane Barrie was an organizer or leader and that her criminal activity involved five or more participants. See United States v. Helbling, 209 F.3d 226, 242-43 (3d Cir. 2000), cert. denied, 121 S. Ct. 833 (2001). We will reverse "only if we are left with a definite and firm conviction that a mistake has been made." United States v. Dent, 149 F.3d 180, 189 (3d Cir. 1998). We may not reverse if the district court's findings are "plausible in light of the record viewed in its entirety." Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985). At the outset, we note that the record in this case consists primarily of a five-and-a-half page report prepared by the SSA's Office of the Inspector General.

Factors to be considered in determining whether a defendant was an organizer or leader of a criminal activity include

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. S 3B1.1, comment. (n.4). Jane Barrie solicited individuals to purchase Social Security cards, received most of the profits, and exercised control over Lucas and her daughter, who generated the illegal cards. We see no clear error in the district court's finding that she was an organizer or leader.

We turn to the court's finding that the criminal activity involved five or more participants. "A `participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. S 3B1.1, comment. (n.1). There is no doubt that Jane Barrie, Yemma Barrie, and Lucas were participants in the criminal activity. We conclude, however, that the district court's finding that the recipients of the unlawfully produced Social Security cards were participants is clearly erroneous.

5

Our analysis is guided by our decision in United States v. Belletiere, 971 F.2d 961 (3d Cir. 1992). In Belletiere, the defendant was found guilty of conspiring with others to distribute and possess cocaine with intent to distribute it. Id. at 962-63. The district court adopted the recommendations in the presentence investigation report, which said Belletiere was the leader of an extensive drug trafficking operation that involved five or more participants: Craig, Mishinski, Yurkovic, Forte, and the DeAngelo brothers. Id. at 964, 968-69. Belletiere regularly sold cocaine to Craig, who used it and sold it to others, including Mishinski, without direction from Belletiere. Id. at 971. Mishinski received several Federal Express packages from Belletiere at Craig's request. Id. Craig also sold cocaine to Yurkovic; Yurkovic decided to cut out the middleman and purchased cocaine directly from Belletiere several times. Id. Forte purchased drugs from Belletiere in Miami in a deal that involved the DeAngelo brothers. Id. at 972. We held that the district court clearly erred in increasing Belletiere's offense level by four levels for two reasons. First, none of the buyers were led or organized by, or answerable to, Belletiere. Id. at 971-72. Second, the evidence did not show any connection between the transactions, but instead

> demonstrate[d] that Belletiere made individual sales of drugs to Craig (which at times involved Mishinski) and Yurkovic, and one sale to Forte (which involved the DeAngelo brothers). Accordingly, it was improper for the district court to treat these two groups of individuals as "participants" in the same criminal activity or offense under section 3B1.1.

Id. at 972. In the case at bar, there was a series of one-time transactions between Jane Barrie and some of the card recipients, and as in Belletiere, the recipients were not participants with each other in the same criminal activity.

The focus of the aggravating role guideline is on relative culpability within a criminal organization, with the adjustment to sentence increasing with the size of the organization and with the level of responsibility. U.S.S.G. S 3B1.1, comment. (backg'd). If Jane Barrie, with the help of her daughter and Lucas, had obtained a Social Security

6

card for one individual rather than numerous individuals, the size of the criminal organization would have been the same. Jane Barrie was the most culpable participant in the conspiracy, and Lucas and Yemma Barrie participated at her direction. The card recipients were the least culpable of all.

Jane Barrie argues that the Social Security card recipients in this case are like the drug purchasers in Belletiere and so are not participants. Customers of drug dealers ordinarily cannot be counted as participants in a drug distribution conspiracy. See United States v. Egge, 223 F.3d 1128, 1133–34 (9th Cir. 2000). Here, many of those who paid to obtain a Social Security card may have been in essentially the same situation as drug purchasers who provide money and know they are obtaining something unlawfully. Some, however, were more deeply involved because they provided information to Jane Barrie or filled out SS–5 forms. These recipients fall somewhere between drug customers and full–blown participants. The problem with the district court's finding that all recipients were participants is that the record demonstrates that there were individuals in a number of different circumstances. Some paid, some did not; some were approached by Jane or Yemma Barrie, others approached them; some filled out an SS–5 form, some did not. We cannot sustain the district court's broad brush approach to identifying participants because it simply rests on too shaky an evidentiary foundation.

The government argues that the recipients were participants because they were aware of their involvement in the scheme. The record does not demonstrate exactly what the card recipients knew about the criminal activity. Some received cards as a favor from Yemma Barrie and had no involvement with Jane Barrie. Most recipients who were interviewed by investigators stated that Jane Barrie approached them and offered to obtain Social Security cards for them. One recipient stated that after she learned that Social Security cards are free, she refused to pay Jane Barrie any more money. The district court's general finding that the recipients had advance knowledge of the criminal activity and participated in it from the outset, is not substantiated by the record before us.

7

The government also argues that the recipients were participants because they expected to receive proceeds of the crime. The Social Security cards are no more proceeds of Jane Barrie's criminal activity than purchased drugs are proceeds of a distribution conspiracy. We are left with a definite and firm conviction that the district court erred in finding generally that the recipients were participants in the criminal activity for purposes of section 3B1.1(a) of the Guidelines.

The government argues that even if the criminal activity did not involve five or more participants, it was otherwise extensive. The presentence report did not identify Jane Barrie as the organizer or leader of an otherwise extensive criminal activity, the government did not argue that the activity was otherwise extensive at sentencing, and the district court did not make a finding on this issue. We need not consider it. See Belletiere, 971 F.2d at 971 n.9.

While the district court erred in finding that the criminal activity involved five or more participants and consequently erred in increasing Jane Barrie's offense level by four, there was no error in its finding that she was an organizer or leader. She was therefore properly subject to a two-level increase under section 3B1.1(c). We vacate the sentence of the district court and remand with instructions to resentence Jane Barrie using the offense level of 19 rather than 21.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit