**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2853
_____

UNITED STATES OF AMERICA

v.

RONALD EDWARD GILLETTE,

Appellant


_____


On Appeal from the District Court
of the Virgin Islands
(D.C. Criminal No. 1-07-cr-00050-001)
District Judge: Honorable Raymond L. Finch
_____


Argued April 24, 2013

Before:   McKEE, *Chief Judge*, SCIRICA and VANASKIE,
*Circuit Judges*

(Filed:  December 6, 2013)

Joseph A. DiRuzzo, III, Esq. [ARGUED]
Fuerst Ittleman David & Joseph, PL
1001 Brickell Bay Drive, 32nd Floor
Miami, FL 33131
          *Counsel for Appellant*

Ronald W. Sharpe, Esq., United States Attorney
Alphonso G. Andrews, Jr., Esq. [ARGUED]
Office of United States Attorney
1108 King Street, Suite 201
St. Croix, U.S. V. I. 00820
          *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

VANASKIE, *Circuit Judge.*

At the heart of this appeal is whether the District Court of the Virgin Islands retains concurrent jurisdiction over local Virgin Islands crimes when the federal crimes giving rise to that jurisdiction are dismissed midtrial. Ronald Edward Gillette was tried in the District Court for failing to register as a sex offender in violation of federal law, and for numerous counts of aggravated rape and unlawful sexual contact in violation of Virgin Islands law. After the Government rested its case, the District Court dismissed the federal charges but proceeded to verdict on the local charges, with Gillette being found guilty of those charges. Gillette appeals his conviction, contending the District Court lacked jurisdiction over the local crimes. We hold that, under these circumstances, the District Court retained concurrent jurisdiction over the local

2

crimes notwithstanding its dismissal of the federal charges. Gillette also challenges several aspects of his trial and sentence. Finding no error, we will affirm.

## I. Background

In the spring of 2007, the U.S. Marshal Service for the District of the Virgin Islands received a tip that Gillette, an unregistered sex offender, might be residing in St. Croix. Believing that Gillette was required to register with local officials as a consequence of his 1983 conviction in New Mexico for Criminal Sexual Penetration and Contributing to the Delinquency of a Minor—crimes for which Gillette served eighteen years of a twenty-seven year sentence in prison—law enforcement authorities followed up on the lead. They discovered that, indeed, Gillette had not registered as a sex offender, and, further, that he was living in St. Croix with a teenage boy.

The authorities went to arrest Gillette at his apartment on charges of failure to register as a sex offender, in violation of the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 *et seq.*, and failure to register as a sex offender within ten days of establishing residency in a state other than the state within which he was convicted, in violation of the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (the "Wetterling Act"), 42 U.S.C. § 14072(g)(3) (repealed 2009). When Gillette was arrested, the authorities found him with M.B., a fifteen-year-old boy. Upon interviewing M.B., the authorities learned that he had been living with Gillette since he was approximately twelve years old, and that the two had been sexually involved during that time. The authorities later

3

learned that Gillette had also victimized another minor boy, M.B.'s younger cousin, A.A..

On October 15, 2007, a federal grand jury handed down a thirty-count superseding indictment charging Gillette with numerous crimes related to his failure to register as a sex offender and his unlawful sexual contact with M.B. and A.A.. Counts 1 and 2 of the indictment alleged violations of the U.S. Code related to Gillette's failure to register as a sex offender.[1] The remaining counts alleged violations of the Virgin Islands Code.[2] Both the federal and local charges

---

[1] Count 1 charged Gillette with failure to register as a sex offender in violation of SORNA, 18 U.S.C. § 2250(a); Count 2 charged him with failure to register as a sex offender within ten days of establishing residency in the Virgin Islands in violation of the Wetterling Act, 42 U.S.C. §§ 14072(g)(3) and (i).

[2] Count 3 charged Gillette with Aggravated Rape in the First Degree in violation of V.I. Code Ann. tit.14, §§ 1700(a)(1) and (a)(2)(c); Count 4 charged him with Unlawful Sexual Contact in the First Degree in violation of V.I. Code Ann. tit. 14 § 1708(2); Counts 5 through 11 charged him with Aggravated Rape in the First Degree in violation of V.I. Code Ann. tit. 14, §§ 1700(a)(2); Counts 12 through 18 charged him with Unlawful Sexual Contact in the First Degree in violation of V.I. Code Ann. tit.14, § 1708(3); Counts 19 through 23 charged him with Aggravated Rape in the Second Degree in violation of V.I. Code Ann. tit.14, § 1700a(a); Counts 24 through 28 charged him with Unlawful Sexual Contact in the Second Degree in violation of V.I. Code Ann. tit. 14, § 1709; and Counts 29 and 30 charged him with

4

were brought in the District Court of the Virgin Islands. The District Court exercised jurisdiction over the local crimes pursuant to 48 U.S.C. § 1612(c), which grants the District Court concurrent jurisdiction with the Virgin Islands courts over certain local crimes "which are of the same or similar character or part of, or based on, the same act or transaction" that constitutes a violation of federal law. 48 U.S.C. § 1612(c).

The Magistrate Judge presided over the initial proceedings against Gillette. After difficulties arose between Gillette and his first court-appointed attorney, Gillette moved for substitution of counsel. The Magistrate Judge granted Gillette's motion, and appointed Eszart Wynter to represent Gillette.

Wynter became concerned Gillette might be incompetent to stand trial, and on September 19, 2007, he moved for a psychological evaluation. The Magistrate Judge granted the request, and a forensic psychologist evaluated Gillette. The psychologist concluded Gillette was competent, notwithstanding a diagnosis of Delusional Disorder, because Gillette demonstrated an understanding of the nature and consequences of the charges against him, as well as an ability to assist in his own defense. After receiving the competency report, Gillette did not request a competency hearing, and the Magistrate Judge did not order one *sua sponte*. Thereafter, neither Gillette, the Magistrate Judge, nor the District Court revisited the issue of Gillette's competency.

Unlawful Sexual Contact in the First Degree in violation of V.I. Code Ann. tit. 14, § 1708(5).

Before the trial commenced, Gillette filed a motion to dismiss Counts 1 and 2 of the indictment, arguing that he was not obligated to register under either SORNA or the Wetterling Act.  First, Gillette argued that he did not meet the requirements of SORNA set out at 18 U.S.C. § 2250(a) because that statute requires interstate travel in addition to failure to register, *see* § 2250(a)(2)(B), and he had not traveled across state lines since SORNA became effective on July 27, 2006.[3]   Second, Gillette argued that the Wetterling

---

[3] 18 U.S.C. § 2250(a) provides that:

> **(a) In general**.--Whoever
> > **(1)** is required to register under the Sex Offender Registration and Notification Act;
> > **(2)(A)** is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

Act did not apply to him because it only required individuals to register with the FBI if they lived in a state that had "not established a minimally sufficient sexual offender registration program," *see* 42 U.S.C. § 14072(c), and, he argued, the Virgin Islands registration program qualified as a minimally sufficient registration program that did not require him to register. *See* V.I. Code Ann. tit. 14, § 1722.

The District Court denied Gillette's motion to dismiss Count 2, finding that he was subject to the Wetterling Act's registration requirements. As to Count 1, the District Court ordered the Government to produce evidence that Gillette had traveled interstate after SORNA's passage. The Government responded that it had "no evidence tending to indicate post 2003 interstate travel of the defendant." (Joint Appendix ["J.A."] 0210.) Despite the Government's response, the District Court denied Gillette's motion as to Count 1 as well, deeming it "premature to find the fact that Gillette has not

---

**(B)** travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

**(3)** knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

traveled in interstate commerce after July 27, 2006 without hearing the evidence at trial." (J.A. 0008.)

The District Court conducted a bench trial on all charges. After the Government rested its case in chief, Gillette moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The District Court granted the motion as to Count 1 due to the absence of evidence of interstate travel by Gillette after SORNA's effective date. The District Court also dismissed Count 2, finding that Gillette's failure to register as a sex offender after relocating to the Virgin Islands did not violate the Wetterling Act because the Virgin Islands is not a "State" as contemplated by the statute.[4] (J.A. 0218.) The District Court, however, refused to dismiss the remaining local charges.

The District Court ultimately found Gillette guilty of Counts 3 through 18, 22, 23, 27, and 28. On June 19, 2009, the District Court sentenced Gillette to 15 years imprisonment on Counts 3 through 11 (Counts 12 through 18 merged with Counts 5 through 11), 10 years on Counts 22 and 23, and 1 year on Counts 27 and 28, with the prison term on Counts 27 and 28 to run concurrently to the prison terms on Counts 22 and 23, respectively, and the remainder to run consecutively, for a total sentence of 155 years. The District Court also

---

[4] The Wetterling Act provided, in pertinent part, that any person required to register as a sex offender, "who changes address to a State other than the State in which the person resided at the time of the immediately preceding registration shall, not later than 10 days after that person establishes a new residence, register a current address . . . ." 42 U.S.C. § 14072(g)(3).

imposed a fine of $50,000 and restitution in the amount of $220,000 ($110,000 each for M.B. and A.A.). Gillette filed a timely notice of appeal.

## II. Discussion

### A. Subject Matter Jurisdiction

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1). We must decide whether the District Court had jurisdiction over the counts of conviction pursuant to 48 U.S.C. § 1612(c). We exercise plenary review over the question of whether the District Court had jurisdiction. *Solis v. Local 234, Transp. Workers Union*, 585 F.3d 172, 176 (3d Cir. 2009).

### 1.

The District Court of the Virgin Islands derives its jurisdiction from Article IV, § 3 of the United States Constitution, which authorizes Congress to regulate the territories of the United States. *Parrot v. Gov't of V.I.*, 230 F.3d 615, 622-23 (3d Cir. 2000). This distinguishes it from other federal courts, whose jurisdiction is grounded in Article III. *Id.* at 623. Because Congress establishes the scope of the Virgin Islands District Court's jurisdiction by statute, we must determine whether § 1612(c) was intended to confer on the District Court the authority to adjudicate charges of local crimes when the related federal counts are dismissed.

Congress enacted § 1612(c) as part of its 1984 amendments to the Revised Organic Act of 1954 ("the Revised Organic Act"), 48 U.S.C. §§ 1541-1645. *See* 48

9

U.S.C. §§ 1611-1615 (West 1987 & Supp. 2000) (codifying 1984 amendments). Prior to the 1984 amendments, the District Court exercised broad jurisdiction over Virgin Islands crimes pursuant to the Revised Organic Act, which vested the District Court with jurisdiction over all matters arising under local Virgin Islands law, except civil cases in which the amount in controversy was less than $500 and criminal cases in which the maximum punishment did not exceed six months in prison or a $100 fine. Act of July 22, 1954, ch. 558, 68 Stat. 506 (1954); *Callwood v. Enos*, 230 F.3d 627, 630 (3d Cir. 2000). Under this framework, the District Court was "more like a state court of general jurisdiction than a United States district court." *Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1057 (3d Cir. 1982).[5]

Three decades later, Congress passed the 1984 amendments to the Revised Organic Act in an effort to "establish[] the framework for a dual system of local and federal judicial review." *Parrott*, 230 F.3d at 619; 48 U.S.C. §§ 1611-1616 (codifying amendments). Seeking to put an end to the "situation of both the district court and the local court having jurisdiction over strictly local causes," 130 Cong. Rec. S. 23789 (Aug. 10, 1984), Congress provided the Virgin Islands legislature with a mechanism to divest the District Court of jurisdiction over cases arising under Virgin Islands law.[6] *See* 48 U.S.C. §§ 1611(b), 1612(b). In doing

---

[5] We have thoroughly examined the evolution of the Virgin Islands District Court's jurisdiction in prior decisions. *See*, *e.g.*, *Parrott*, 231 F.3d at 619 n.3; *Carty*, 679 F.2d at 1053-57; *United States v. George*, 625 F.2d 1081, 1087-88 (3d Cir. 1980).

10

so, however, Congress specifically provided that the District Court would retain concurrent jurisdiction over charges alleging local crimes that are related to federal crimes. *See* 48 U.S.C. § 1612(c). Accordingly, when the Virgin Islands legislature vested original jurisdiction over local criminal actions in the local courts of the Virgin Islands, the District Court retained concurrent jurisdiction pursuant to § 1612(c).

One of the explicit purposes in creating the concurrent jurisdiction statute was "to obviate the need for trying in different courts separate aspects of the same offense or of closely related offenses." 130 Cong. Rec. S. 23789 (Aug. 10, 1984). To that end, 48 U.S.C. § 1612(c) provides:

> The District Court of the Virgin Islands shall have concurrent jurisdiction with the courts of the Virgin Islands established by local law over those offenses against the criminal laws of the Virgin Islands, whether felonies or misdemeanors or both, which are of the same or similar character or

---

[6] The Virgin Islands legislature vested original jurisdiction in its local courts effective January 1, 1994. *See* V.I. Code Ann. tit. 4, § 76(b). At that time, the local court was known as the Territorial Court. On September 30, 2004, however, the Virgin Islands legislature passed Bill No. 25-0213, renaming the Territorial Court the Superior Court of the Virgin Islands, effective October 20, 2004. *Pichardo v. V.I. Comm'r of Labor*, 613 F.3d 87, 90 n.1 (3d Cir. 2010).

11

part of, or based on, the same act or transaction or two or more acts or transactions connected together or constituting part of a common scheme or plan, if such act or transaction or acts or transactions also constitutes or constitute an offense or offenses against one or more of the statutes over which the District Court of the Virgin Islands has jurisdiction . . . .

*Id.* Here, the parties do not dispute that Gillette's federal and local charges were sufficiently related to trigger concurrent jurisdiction under § 1612(c). Gillette maintains, however, that the District Court's dismissal of the federal charges deprived it of jurisdiction over the local charges.

2.

Gillette asserts that "if the actions which create liability under Virgin Islands local law do not create criminal liability under federal law, then the District Court lacks concurrent jurisdiction." (Reply Br. 3.) Gillette's argument is based on the text of § 1612(c), which grants concurrent jurisdiction where violations of local law also "constitute an offense or offenses" against federal law. 48 U.S.C. § 1612(c).

Section 1612(c), however, does not condition the exercise of concurrent jurisdiction over local charges on whether the related federal offenses are proven. Indeed, unlike the grant of concurrent jurisdiction to the United States District Court for the District of Columbia in criminal cases,

12

*see* D.C. Code § 11-502(3), or the civil supplemental jurisdiction statute, 28 U.S.C. § 1367, section 1612(c) does not even require that a sufficiently related federal offense be included in the indictment in order for the District Court to exercise jurisdiction over the local charges.[7]  Instead, all that

[7] D.C. Code § 11-502 provides:

> In addition to its jurisdiction as a United States district court and any other jurisdiction conferred on it by law, the United States District Court for the District of Columbia has jurisdiction of the following:
>
> . . . .
>
> (3) Any offense under any law applicable exclusively to the District of Columbia which offense *is joined* in the same indictment with any Federal offense." (Emphasis added).

28 U.S.C. § 1367 provides, in pertinent part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related *to claims in the action within such original jurisdiction* that they form part of

13

is required is that there be a sufficient nexus between the local charges and "an offense or offenses against one or more of the statutes over which the District Court of the Virgin Islands has jurisdiction. . . ." 48 U.S.C. § 1612(c). Gillette's concession that there was the requisite nexus between the local crimes and the federal offenses that were charged is sufficient to end the jurisdictional inquiry, notwithstanding the dismissal of the federal charges.

Even if joinder of a federal offense in the instrument charging local crimes was required for exercise of concurrent jurisdiction under § 1612(c), the subsequent dismissal of federal charges does not impact the District Court's concurrent jurisdiction. *Cf., United States v. Johnson*, 46 F.3d 1166, 1171-72 (D.C. Cir. 1995) (holding that under the District of Columbia Code the dismissal of federal charges did not deprive the District Court for the District of Columbia of jurisdiction over local charges). The seminal case establishing that dismissal of properly joined federal charges does not divest the District Court for the District of Columbia of jurisdiction over local District of Columbia charges is

> the same case or controversy under Article II of the United States Constitution. . . . (Emphasis added).

Thus, exercise of jurisdiction over claims or charges otherwise outside the authority of the district courts is conditioned upon the existence of a claim or charge over which the federal court has original jurisdiction. Section 1612(c) is not similarly phrased.

14

*United States v. Shepard*, 515 F.2d 1324 (D.C. Cir. 1975). In *Shepard*, the appellant was indicted on charges of robbery of a federally insured state savings and loan association, in violation of the United States Code, and armed robbery, robbery, and assault with a dangerous weapon, in violation of the District of Columbia Code. *Shepard*, 515 F.2d at 1326-27. The appellant was tried before a jury in the United States District Court for the District of Columbia, which exercised jurisdiction over the District of Columbia Charges under D.C. Code § 11-502. *Id.* Section 11-502 grants the District Court for the District of Columbia jurisdiction over "[a]ny offense under any law applicable exclusively to the District of Columbia which offense is joined in the same information or indictment with any Federal offense." D.C. Code § 11-502(3). Before the case was submitted to the jury, the government dismissed the federal offense – robbery of a savings and loan association. *Shepard*, 515 F.2d at 1327. The jury subsequently found the appellant guilty of armed robbery and assault with a deadly weapon. *Id.* at 1328. The appellant challenged his conviction, arguing that the district court's jurisdiction over the District of Columbia Code offenses "lapsed when the federal count in the indictment was dismissed." *Id.*

The Court of Appeals for the District of Columbia disagreed, holding that "where federal and local offenses have been properly joined in one indictment and jeopardy has attached, the District Court may proceed to a determination of the local offenses regardless of any intervening disposition of the federal counts." *Id.* at 1331. In reaching this conclusion, the *Shepard* court looked to the civil law doctrine of supplemental jurisdiction, which allows federal courts to exercise jurisdiction over claims arising under state law if

15

those claims share "a common nucleus of operative fact" with claims arising under federal law. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). As the *Shepard* court noted, once a U.S. District Court has properly acquired supplemental jurisdiction, "it may determine all questions arising, irrespective of the disposition of the federal claim." *Shepard*, 515 F.2d at 1330; *see also Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Emps.*, 974 F.2d 391, 398 (3d Cir. 1992) ("[I]t is well settled that, after disposal of a federal claim, a district court has discretion to hear, dismiss, or remand a supplemental claim for which there is no independent basis for federal subject matter jurisdiction.").

Using this doctrine as "a model for the resolution of [its] case," the *Shepard* court observed that a goal of supplemental jurisdiction is to promote efficiency and conservation of judicial resources, and that this goal is particularly significant when a district court has received evidence on both claims prior to dismissal of the federal claims. *Shepard*, 515 F.2d at 1330. Similarly, the court reasoned, Congress's goal in passing § 11-502(3) was to "minimize . . . the burdens on the courts and prosecution," and this goal would be served "where an indictment charging offenses arising from a single factual situation [could] be tried in a single proceeding rather than in two proceedings in separate courts." *Id.* at 1330-31. Given the "serious duplication of effort" that would result if the District Court for the District of Columbia were forced to relinquish jurisdiction over District of Columbia charges even after a trial commenced, the *Shepard* court concluded that mid-trial dismissal of federal charges did not divest the federal court of its jurisdiction. *Id.* at 1331.

16

We are persuaded by *Shepard*'s reasoning. Congress's purpose in enacting 48 U.S.C. § 1612(c) was the same as its purpose in passing D.C. Code § 11-502(3): to prevent the need for multiple trials in different courts of "separate aspects of the same offense or of closely related offenses." 130 Cong. Rec. S. 23789 (Aug. 10, 1984). Gillette's interpretation of § 1612(c) would eviscerate this express congressional purpose. Instead of conserving judicial resources by providing for one trial on all related counts, Gillette's interpretation of § 1612(c) would force the government to either bring the charges in two different trials, or risk investing significant energy in proving local charges in the District Court, only to see them dismissed if it was unsuccessful in proving the federal charges. Nothing in the legislative history nor the plain language of § 1612(c) supports the conclusion that Congress intended to make "the disposition of the local charges turn upon the strength of the Government's case in support of the federal counts." *See Shepard*, 515 F.2d at 1329. On the contrary, § 1612(c) does not make District Court jurisdiction depend on the existence of a federal charge. It merely requires that the local charge be of the same or similar character as a federal crime over which the District Court of the Virgin Islands has jurisdiction, or that the local charge be based upon acts or transactions that also constitute a federal offense. As this requisite relationship concededly existed at the inception of the Gillette's criminal case, the mid-trial disposition of the federal charges is simply irrelevant to the exercise of jurisdiction over the local charges.

3.

17

Gillette, however, argues that the federal charges should not have made it to trial, asserting that the District Court should have dismissed them pursuant to his pre-trial motion to dismiss. The premise of Gillette's argument – that the motion to dismiss the federal charges should have been granted before trial – is unsound.[8]

Gillette moved to dismiss Count 1 of the indictment on the basis that he had not traveled in interstate commerce after SORNA became effective. Because interstate travel is a necessary element of that statute, *see* 18 U.S.C. § 2250(a)(2)(b), he argued that applying SORNA to him would violate the Ex Post Facto Clause of the United States Constitution. After considering Gillette's motion to dismiss Count 1, the District Court ordered the government to "represent to the Court when Gillette last traveled in interstate commerce." (J.A. 0209.) The Government complied, explaining that it "ha[d] no evidence tending to indicate post 2003 interstate travel . . . ." (*Id.* 0210.) Nevertheless, the District Court denied the motion without prejudice, "believ[ing] it to be premature to find the fact that Gillette ha[d] not traveled in interstate commerce after July 27, 2006, without hearing the evidence at trial." (*Id.* 0008.)

It is well-established that an indictment "is enough to call for a trial of the charge on the merits" so long as it is facially sufficient. *Huet*, 665 F.3d at 594-95 (citing *United States v. Vitillo*, 490 F.3d 314, 320 (3d Cir. 2007)). An indictment is facially sufficient if it:

---

[8] Our review of the District Court's legal conclusions as to the motion to dismiss is plenary. *United States v. Huet*, 665 F.3d 588, 594 (3d Cir. 2012).

18

(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.

*Id.* at 595 (quoting *Vitillo*, 490 F.3d at 321). We have explained that, in general, "an indictment will satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." *Id.* Here, the indictment met each of these three requirements: it charged Gillette with failure to register as a sex offender in violation of 18 U.S.C. § 2250(a), it listed the elements of that statute—including the interstate travel element, alleged that Gillette violated each of the elements, and set forth a time period during which the alleged violations occurred. Thus, the indictment was facially valid.

Gillette moved to dismiss Count 1 by arguing that the Government could not make out a necessary element of the charge. However, our precedents make clear that a pretrial motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(3) "allows a district court to review the sufficiency of the government's *pleadings*," *Huet*, 665 F.3d at 595 (emphasis added), but it is "not a permissible vehicle for addressing the sufficiency of the government's *evidence*." *Id.*

19

(emphasis added) (quoting *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000)). Indeed, a district court is prohibited from examining the sufficiency of the government's evidence in a pretrial motion to dismiss because "[t]he government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29." *Id.* Thus, as we explained in *Huet*, a district court considering a pretrial motion to dismiss is "limited to determining whether, assuming all of [the facts alleged in the indictment] as true, a jury could find that the defendant committed the offense for which he was charged." *Id.* at 596.

Gillette contends that the Government stipulated before trial that he had not traveled in interstate commerce after SORNA became effective. We have suggested in past cases that there may be an exception to the general rule barring a court from addressing sufficiency of the evidence before trial where "there is a stipulated record." *DeLaurentis*, 230 F.3d at 659. However, as we noted in *Huet,* "we have never explicitly held that such an exception exists, much less defined its contours." *Huet*, 665 F.3d at 598 n.8. We declined to define such an exception in *Huet*, and we also decline to do so now, particularly because the appeal before us does not present a stipulated record. A stipulation is "[a] voluntary agreement between opposing parties concerning the same relevant point." Black's Law Dictionary 1550 (9th ed. 2009). Here, there was no voluntary agreement between Gillette and the Government that he had not traveled interstate. Instead, the Government answered truthfully that, at the time the District Court inquired pretrial, it could not come forward with evidence of that travel. This representation did not strip the Government of its right to

20

"marshal and present its evidence at trial." *Huet*, 665 F.3d at 595. Accordingly, the District Court did not err in denying Gillette's pretrial motion to dismiss Count 1.

Even if Count 1 should have been dismissed before trial, the District Court did not err in denying Gillette's pretrial motion as to Count 2. Gillette had argued that the Wetterling Act did not apply to him because the Virgin Islands sex offender registration law, V.I. Code Ann. tit. 14 § 1722, allegedly did not require him to register. The District Court was unpersuaded, finding that Gillette violated the Wetterling Act if he was required to register under New Mexico's sexual offender program and later changed his residence to the Virgin Islands without registering with the Virgin Islands and the FBI.[9]

Although the District Court ultimately dismissed Count 2 midtrial, it did so on an entirely different basis. The District Court dismissed Count 2 for failing to state an offense because the Court concluded that the Virgin Islands—a territory of the United States—is not a State as contemplated by the Wetterling Act.[10] The District Court raised this issue *sua sponte*, as Gillette did not assert it in either his pretrial motion or Rule 29 motion.[11] Thus, the

---

[9] For the text of the relevant portion of the Wetterling Act, *see supra* note 4.

[10] We express no opinion as to the merits of the District Court's interpretation of the Wetterling Act.

District Court committed no error by denying Gillette's pretrial motion to dismiss Count 2 on a basis it found unpersuasive, and Gillette cannot claim error in the District Court's failure to dismiss Count 2 before trial on a ground never presented by Gillette.

Finally, Gillette's contention that the District Court's dismissal of the federal charges means that the District Court lacked subject matter jurisdiction is without merit. Gillette's argument conflates the grounds upon which the District Court dismissed Counts 1 and 2 with a lack of subject matter jurisdiction. Neither insufficiency of the evidence nor failure to state an offense means that the charged conduct was outside the authority of the District Court to adjudicate.

---

[11] In fact, Gillette's attorney all but conceded that the Virgin Islands is a State within the meaning of the Wetterling Act, asserting at the Rule 29 hearing:

> I do not have an issue with the fact that the statute applies to the Virgin Islands by definition, and might have been intended by statute.
>
> If I give – and if the Court finds that I'm wrong, I will be happy to accept that, okay, so I'm not conceding it, but as I said, I do not have a problem with that interpretation. . . .

(J.A. 1104-05.)

Thus, the District Court's dismissal of Counts 1 for insufficiency of the evidence and Count 2 for failure to state an offense has no bearing on the question of the District Court's subject matter jurisdiction over those counts. For this reason, we reject Gillette's argument that the District Court could not have obtained concurrent jurisdiction over the local Virgin Islands charges because it lacked such jurisdiction over the federal charges at the inception of the case.

## B. Competency

Gillette argues that both the Magistrate Judge and the District Court erred by failing to hold a hearing to determine his competency, and that there is a reasonable probability that he was tried while incompetent. We exercise plenary review over a district court's interpretation and application of the standards for determining competency, but we review for clear error a district court's decision not to hold a competency hearing. *United States v. Leggett*, 162 F.3d 237, 241 (3d. Cir. 1998).

Due process prohibits the conviction of a legally incompetent person. *Pate v. Robinson*, 383 U.S. 375, 378 (1966). A defendant is legally incompetent if the defendant "lacks the capacity to understand the nature and object of the proceedings[,] . . . to consult with counsel, and to assist in preparing a defense." *Leggett*, 162 F.3d at 241 (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975)).

The procedure for determining competency is set forth in 18 U.S.C. § 4241, which provides, in relevant part:

23

**(a) Motion to determine competency of defendant.--** At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant . . . the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

**(b) Psychiatric or psychological examination and report.--** Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted,

24

> and that a psychiatric or psychological report be filed with the court . . . .

§ 4241. As the text of § 4241 makes clear, a court must conduct a competency hearing if there is "reasonable cause" to believe the defendant is incompetent, whether or not either party requests it.

To determine whether such reasonable cause exists, a court must consider the unique circumstances of each case to decide if the defendant "(1) has the capacity to assist in her or his own defense and (2) comprehends the nature and possible consequences of trial. If either prong is not met, a court has reasonable cause to order a competency hearing." *United States v. Jones*, 336 F.3d 245, 256 (3d Cir. 2003). In making this determination, "a district court must consider a number of factors, including 'evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial.'" *Id.* (citing *Leggett*, 162 F.3d at 242).

Gillette's attorney made a motion requesting a competency evaluation on September 19, 2007. The Magistrate Judge granted the request, and a forensic psychologist evaluated Gillette. The psychologist concluded Gillette was competent to stand trial, explaining:

> While Mr. Gillette has been diagnosed with a thought disorder, Delusional Disorder should not be expected to significantly compromise his

25

perception or comprehension of reality related to his legal circumstances. . . . He has demonstrated a rational and factual understanding of the proceedings against him, and sufficient ability to consult with his attorney with a reasonable degree of rational understanding. . . . Mr. Gillette is not currently suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him or properly assist in his defense.

(J.A. 1621.) After receiving the competency report, Gillette did not request a hearing on competency, and the District Court did not order one.

Gillette now contends it was error not to hold a hearing on competency, asserting that § 4241 "always contemplates that a competency hearing will be held where a court has ordered a psychological evaluation." (Appellant's Br. 26.) He points to § 4241(b), which states that the court may order a psychiatric or psychological evaluation "[p]rior to the date of the hearing," reasoning that this language assumes a hearing will be held where a competency evaluation is ordered. Gillette also points to § 4241(a), which states that a court "shall" order a hearing. Gillette fails to note, however, that the obligation to hold a competency hearing is triggered

26

only when a court finds that there is reasonable cause to doubt competency. *See* § 4241(a) ("[T]he court shall grant the motion, or shall order such a hearing on its own motion, *if there is reasonable cause to believe* that the defendant [is incompetent].") (emphasis added). In addition, § 4241(b) discusses the court's authority to order an evaluation *after* having already ordered a competency hearing. In other words, the obligation to order a hearing is not triggered under § 4241(a) unless the court has reasonable cause to doubt a defendant's competency, and § 4241(b) does not apply unless a court has already ordered a hearing under § 4241(a). Moreover, nothing in the text of § 4241 prohibits a court from ordering a psychological evaluation without finding it has reasonable cause to doubt competency. Thus, a district court errs in failing to hold a competency hearing only if there is reasonable cause to believe that the defendant is incompetent.

After carefully examining the record, we hold that neither the Magistrate Judge nor the District Court clearly erred in failing to order a competency hearing. Both judges had before them a report by a qualified medical professional concluding that, although Gillette suffered from Delusional Disorder, he was legally competent. The psychologist's conclusion comports with the behavior Gillette exhibited throughout the case, during which Gillette testified that he was employed by the CIA,[12] suffered from a traumatic brain

---

[12] Testifying before the Magistrate Judge on October 1, 2007, Gillette stated that he had worked for the CIA since 1974. When questioned, he responded: "Before I answer your question, sir, I must ask that I be granted all rights, privileges, immunities and guarantees covered by me by the CIA and the White House." (J.A. 87.)

27

injury,[13] was currently a semi-professional pool player,[14] and was "disabled a hundred percent,"[15] but nevertheless also

---

[13] Gillette testified before the District Court that he suffered a traumatic brain injury while serving in the military in Vietnam. When asked on direct examination what the effect of the brain injury was, Gillette responded:

> For example, we all at some time wake up in the morning. We don't know if it's a, say a Tuesday or a Wednesday. Well, not often, but at times, I will wake up and not even know the day. I wouldn't know Sunday, Monday, Tuesday, Wednesday, Thursday, Friday, Saturday. And I will have to take and go out to the computer and look at the computer to jog my memory.

(J.A. 1237-38.)

[14] Testifying to the activities he did with M.B., Gillette stated that he taught M.B. how to play pool, because he was "a semi-professional pool player." (J.A. 1252.)

[15] Gillette testified that he was retired and "disabled a hundred percent" in response to questioning on direct examination about why he began helping M.B. with his homework. Gillette's testimony seems to have been intended

exhibited an ability to understand the charges against him and to assist in his defense. Indeed, Gillette's communications with his lawyer demonstrated that he understood the legal proceedings against him. One note Gillette wrote to his counsel during trial explained "[b]ecause I might testify, she will bring up the 1983 conviction; therefore, you need to study three areas. . . ." (S.A. 298.) Furthermore, Gillette's attorney made statements to the court indicating that Gillette was involved in preparing his defense. Requesting that the court order the Bureau of Corrections to provide Gillette with reading glasses and writing materials, trial counsel explained "it gives him the opportunity to research, because this gentleman is not stupid to me, the things them (sic) he's telling me, but he wants to research and verify certain things for himself." (S.A. 280-81.) Taken as a whole, the record does not establish reasonable cause to believe Gillette was incompetent. Therefore, we find that the District Court committed no error in failing to hold a competency hearing.

C. Counsel's Motions to Withdraw

Gillette next argues the Magistrate Judge and District Court erred by denying his trial counsel's requests for withdrawal in violation of his Sixth Amendment right to counsel. This argument is unavailing.

The Sixth Amendment guarantees indigent defendants the right to appointed counsel, but that right is "not without limit and cannot be the justification for . . . manipulation of the appointment system." *Fischetti v. Johnson*, 384 F.3d 140,

to explain why he had extra time in his schedule to get involved with M.B.. (J.A. 1254.)

29

145 (3d Cir. 2004). A district court's refusal to substitute counsel is reviewed for abuse of discretion. *United States v. Goldberg*, 67 F.3d 1092, 1098 (3d Cir. 1995). We have held that a district court abuses its discretion only if "good cause is shown for the defendant's dissatisfaction with his current attorney." *Id.* (citing *United States v. Welty*, 674 F.2d 185, 187 (3d Cir. 1982)) (internal quotation marks omitted). We have defined "good cause" as "a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with an attorney." *Id.* Relying on these cases, Gillette argues it was an abuse of discretion to deny Wynter's motions to withdraw because, in his view, Wynter's representation that "[a] breakdown in the attorney client relationship exist[ed]," constituted good cause for substitution. (J.A. 0215.)

As an initial matter, we note that Gillette appeals the District Court's denial of his attorney's motions to withdraw, not the denial of any motion for substitution filed by Gillette himself. Therefore, the case law Gillette cites does not neatly apply here. Although Wynter testified at the February 4, 2008 hearing that Gillette had asked him to withdraw, it is not clear that the remaining motions were filed at Gillette's request. However, even if we construe Wynter's motions to withdraw as requests by Gillette for substitution of counsel, we conclude that neither the Magistrate Judge nor the District Court erred in determining that "good cause" for substitution was lacking.

Both the Magistrate Judge and the District Court made extensive inquiries into Wynter's pretrial motions to withdraw. The Magistrate Judge held a hearing after Wynter's first motion, during which Gillette himself testified

30

at length. In denying the motion for withdrawal, the Magistrate Judge expressed concern that Gillette was seeking to "manipulate the Court" and "frustrate the process," by alleging that his lawyers were incompetent. (S.A. 264-65.) He also observed that Gillette had already successfully received substitute counsel once. Accordingly, he denied Wynter's motion for withdrawal. On March 17, 2008, the District Court presided over a subsequent withdrawal hearing, where Gillette again testified at length. Gillette's testimony at that hearing was equivocal, and at one point he stated that he "would have no objection" to further representation by Wynter provided he filed certain motions. (S.A. 337.)

While it was clear at both hearings that the relationship between Gillette and Wynter was not without friction, it was also clear that the relationship had not suffered a complete breakdown requiring substitution of counsel. In addition, Gillette had already substituted counsel once in the case, and both the Magistrate Judge and the District Court had reason to find that substitution would unduly delay the proceedings. Accordingly, we conclude that there was no abuse of discretion in denying Wynter's motions to withdraw.

D. Reasonableness of Gillette's Sentence

Gillette next argues his sentence was substantively unreasonable because the District Court "effectively sentence[ed him] to death," without properly considering his age and history of mental illness. (Appellant's Br. 51.) We are not persuaded.

Our review of the substantive reasonableness of a district court's sentence is highly deferential, and we will

31

affirm "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). Further, because Gillette did not object to the imposition of consecutive sentences at sentencing, "we review the matter only to assure that 'plain error' was not committed." *United States v. Pollen*, 978 F.2d 78, 88 (3d Cir. 1992). Under either standard, we find the District Court's sentence to be substantively reasonable.

First, Gillette was convicted of several counts of both Aggravated Rape in the First Degree and Aggravated Rape in the Second Degree, V.I. Code Ann. tit. 14, §§ 1700, 1700a, and the statutory maximum under both provisions is life imprisonment.[16] Thus, the District Court had discretion to sentence Gillette to a term of life imprisonment under either statutory provision, even without imposing consecutive sentences.

Second, we agree with the District Court that its sentence served several purposes, including protecting the

---

[16] Gillette was convicted of eight counts of Aggravated Rape in the First Degree, V.I. Code Ann. tit. 14, § 1700, which provides that a person convicted under that statute "shall be imprisoned for life or for any term of years, but not less than fifteen years," and two counts of Aggravated Rape in the Second Degree, V.I. Code. Ann. tit. 14, § 1700a(a), which provides that whoever is convicted under that provision "shall be imprisoned for life or for any term in years, but not less than 10 years."

public and providing just punishment for the severity of Gillette's crimes. Explaining its sentence, the District Court stated:

> The acts of this defendant are morally repulsive. He has in a very heinous and devious fashion violated two young boys in this territory. This is Mr. Gillette's second conviction involving sexually violating minors. He served about twenty-seven years of incarceration,[17] and again finds himself before us, this court system, for substantially the same offenses. The sentence which I am about to impose will certainly reflect how serious these offenses are. I hope they provide a respect for the law, and it's a just punishment for the offenses for which he has been found guilty, and hope that they would provide deterrence from further crimes. And also protect the public from further crimes of this type.

---

[17] The District Court appears to have been mistaken about the number of years Gillette was incarcerated. The record indicates that he served eighteen years of incarceration for a twenty-seven year sentence. (J.A. 0055, 1404.)

33

(J.A. 1556-57.) As the District Court noted, Gillette was a repeat sexual offender who previously spent eighteen years in prison for his unlawful sexual contact with a minor in New Mexico only to move to the Virgin Islands and victimize two other children. Given this history, the District Court reasonably determined that Gillette posed a continuing danger to the public. Additionally, the District Court's sentence properly reflects the seriousness and extent of the harm Gillette's crimes caused to his victims.

Gillette contends the District Court failed to adequately explain its sentence, and erred by failing to discuss or account for Gillette's age and history of mental illness. We disagree. As set forth above, the District Court adequately explained the reasons for its sentence, and we find the record abundantly supports the sentence. Therefore, we will affirm the substantive reasonableness of the District Court's sentence.

## E. Restitution

Finally, Gillette challenges the District Court's restitution order. He argues that he should not have been ordered to pay restitution because he was not convicted of a property crime; the expenses for which restitution was imposed are speculative; there is no record of his ability to pay restitution; and a reasonable payment schedule was not established. We review the District Court's imposition of restitution for plain error because Gillette did not challenge it at sentencing. *United States v. Hawes*, 523 F.3d 245, 255 (3d Cir. 2008).

The District Court ordered restitution pursuant to Title 34, Section 203 of the Virgin Islands Code, which is commonly referred to as the "Victims' and Witness' Bill of Rights." Gillette's argument that restitution is proper only in cases involving property crimes is foreclosed by this statute, which provides in pertinent part:

> A victim has a right to receive restitution for expenses or property loss incurred as a result of the crime. The judge shall order restitution at every sentencing for a crime against person or property . . . unless the court finds a substantial and compelling reason not to order restitution. . . .

34 V.I. Code Ann. § 203(d)(3). This provision clearly states that restitution is proper for crimes "against *person* or property." *Id.* (emphasis added). We therefore reject Gillette's argument that restitution may only be ordered as punishment for property crimes.

We also reject Gillette's argument that restitution in this case is inappropriate because calculation of the financial harm Gillette's victims will likely suffer is speculative. We have held that, in calculating restitution, courts "must point to the evidence in the record supporting the calculation of loss to the victims," based on "specific findings regarding the factual issues." *United States v. Graham*, 72 F.3d 352, 356-57 (3d Cir. 1995). The District Court satisfied this requirement, as the amount of restitution was based on itemized reports

35

prepared by a developmental and forensic pediatrician. Because the District Court's restitution order was based on specific calculations of harm, it was not impermissibly speculative.

Gillette also argues the District Court should have conducted an inquiry into his ability to pay and established a reasonable payment schedule as contemplated by 18 U.S.C. § 3663. This provision of the United States Code, however, applies only to violations of federal law, and no similar Virgin Islands legislation exists. To be sure, we have "strongly recommended" that the Virgin Islands District Court nevertheless conduct the type of inquiry set forth in 18 U.S.C. § 3663 as "a better, if not essential, practice." *Gov't of V.I. v. Marsham*, 293 F.3d 114, 119 (3d Cir. 2002). Indeed, in *Marsham*, we explicitly recommended an inquiry into the defendant's ability to pay restitution, even though 18 U.S.C. § 3663 no longer required it. *Id.* at 119 n.5. Significantly, in recommending that the District Court conduct such an inquiry, we did so "with the full acknowledgement that although we deem this a most desirable practice, a failure to initiate such an inquiry does not at this stage constitute reversible error unless and until our Court so holds." *Id.* at 119. Since we decided *Marsham* in 2002, we have not held that failure to conduct this inquiry is mandated, and we do not hold so now. Accordingly, we conclude that the District Court did not plainly err in failing to assess Gillette's ability to pay restitution or to establish a payment schedule.

III.

For the foregoing reasons, we will affirm the judgment and sentence of the District Court.