**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3688
_____

UNITED STATES OF AMERICA

v.

ALBERT CABAN,
                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 1-12-cr-00056-001)
District Judge:  Honorable Yvette Kane

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 8, 2014

Before:  RENDELL, CHAGARES, and JORDAN, Circuit Judges.

(Filed: July 11, 2014)
_____

OPINION
_____

CHAGARES, Circuit Judge.

Albert Caban appeals several aspects of his conviction and sentence.  Finding no

merit in any of his contentions, we will affirm.

I.

Because we write solely for the benefit of the parties, we will only recount the facts necessary to our disposition. A sting operation by the United States Secret Service, in conjunction with local law enforcement, discovered a scheme organized by Caban to steal credit card numbers. In January 2012, a confidential informant introduced an undercover law enforcement officer to Eddie Pabon, one of Caban's co-conspirators. The undercover officer convinced both Pabon and Caban that he worked at a business with access to credit cards and was willing to steal credit card information and sell the information to Caban. Caban agreed, and provided the undercover officer with a skimming device, instructed the officer on its use, and told the officer to skim about twenty cards before returning it. In conjunction with several financial institutions, law enforcement officers set up fictitious credit card accounts with low credit limits, and loaded those credit card numbers onto the skimming device. After the law enforcement officer returned the device to Caban, the fictitious credit card numbers were used at local retailers almost immediately.

Caban also provided the device to another co-conspirator, Brooklyn Gelbaugh, who was employed as a server at a local chain restaurant. Gelbaugh skimmed ten to fifteen credit cards over a three-day period in late January. The scheme ended on February 10, 2012, when law enforcement agents executed a search warrant on Caban's residence, arrested Caban and several co-conspirators, and seized physical evidence including a laptop that contained stolen credit card information. In all, bank records

2

indicate that the skimmed credit cards were used to make about $3,500 in actual purchases.

Caban was indicted on bank fraud and related offenses, including aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). As part of its disclosure obligations, the Government provided the defense with audio and video recordings of the undercover officer's meetings with Caban in which Caban explained the scheme and gave directions to the officer, police reports summarizing various fraudulent credit card transactions, records from the financial institutions that had been victimized by the scheme, records from retailers that corroborated the fraudulent transactions, and records from the search warrant. This production occurred in March of 2012.

On September 4, 2012, Caban made a pro se request for new counsel. Caban felt as though he was being pressured to accept a plea bargain and claimed that his current attorney was not pursuing suppression and other pretrial motions. The District Court granted Caban's request and appointed new counsel.

The case headed to trial in the spring of 2013. On the Friday before the trial was to begin, the Government produced an additional 450 pages of discovery materials to the defense consisting predominantly of reformatted versions of the Government's earlier production (to make the various financial records easier on jurors' eyes). Caban then made a second request to change counsel. He argued that his attorney was not ready for trial in light of the new discovery material, that he did not understand the discovery material, and that his attorney had not filed certain motions. Caban's attorney stated that while he would prefer to have more time, he was ready to proceed, and that he had

3

investigated the potential grounds for the motions that Caban wanted filed and found them meritless.

The District Court denied Caban's motion and offered Caban the choice of keeping his existing attorney or proceeding to trial pro se. At this point, Caban expressed an interest in pleading guilty to all of the charges except aggravated identity theft. Caban maintained that stealing a credit card number was not akin to stealing another's identity, and that he was not guilty of this crime. The District Court refused to entertain a guilty plea from Caban at this point because of his declaration of innocence. The Government then explained, on the record, that credit card numbers are a form of identity under federal law, and the court broke for a half-hour recess. At the end of this recess, Caban agreed to plead guilty to all five counts, and the court, after a thorough colloquy, accepted his plea.

The Probation Office calculated Caban's total offense level as 13 and his criminal history category as VI. The Probation Office included a six-level enhancement in Caban's offense level because it found that the loss that the scheme intended was more than $30,000 and less than $70,000. See U.S.S.G. § 2B1.1(b)(1). The Probation Office attributed a total intended loss to Caban of $39,211, which consisted of the actual losses to the financial institutions plus the credit card limits for the compromised cards. The Probation Office also added a two-level enhancement on account of the fact that Caban was a leader, organizer, manager, or supervisor of the small conspiracy. See U.S.S.G. § 3B1.1(c). Caban objected to both of these enhancements.

4

The District Court upheld the two-level enhancement for being a leader, but rejected the application of the six-level enhancement for the amount of intended loss. It held that the Government had not proven that Caban was aware of the credit limits on the cards that he had stolen. In accordance with our recent decision in United States v. Diallo, 710 F.3d 147 (3d Cir. 2013), it concluded that unless the Government could prove that Caban was aware of the total credit limits on the cards, the only losses that the Government could attribute to Caban were the actual losses, which were less than $5,000. Accordingly, Caban's offense level was reduced to 7, and his advisory Guideline range reduced to 15 to 21 months of imprisonment (on the bank fraud and related counts, plus a mandatory 24 months of imprisonment on the aggravated identity theft count). In sentencing Caban, the court concluded that the lower Guideline range did not take the seriousness of Caban's actions into account, and at the request of the Government, the District Court imposed an above-Guideline sentence of 41 months, plus the mandatory 24 months, for a total term of 65 months of imprisonment. Caban timely appealed.

## II.

The District Court had jurisdiction over the alleged violations of federal criminal law pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## III.

## A.

Caban first argues that the District Court violated his Sixth Amendment right to counsel when it denied his second request to substitute counsel on the eve of trial. We

5

review a denial of a motion to substitute counsel for abuse of discretion. United States v. Goldberg, 67 F.3d 1092, 1097 (3d Cir. 1995). A district court abuses its discretion "only if good cause is shown for the defendant's dissatisfaction with his current attorney." United States v. Gillette, 738 F.3d 63, 78 (3d Cir. 2013) (quotation marks omitted). To show "good cause," a defendant must demonstrate "a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with an attorney." Id. (quotation marks omitted). We will not find a Sixth Amendment violation "unless the district court's 'good cause' determination was clearly erroneous or the district court made no inquiry into the reason for the defendant's request to substitute counsel." Goldberg, 67 F.3d at 1098.

The District Court did not abuse its discretion in denying Caban's second motion for a new attorney because Caban did not demonstrate good cause for such a substitution. Although Caban may not have felt his attorney was prepared for trial, his attorney stated that he was, and there was little reason that he would not have been. The new material that the Government produced to Caban on the eve of trial was largely duplicative of material that had been in Caban's possession for over a year. The suppression motion that Caban wanted to make was legally meritless, and the motion to introduce evidence of a police witness's disciplinary proceeding had already been denied. The District Court did not err in concluding that the general dissatisfaction that Caban expressed about his attorney was insufficient to warrant further delay in the start of Caban's trial or to appoint new counsel.

6

B.

Caban also argues that his guilty plea was not knowing, voluntary and intelligent because he had previously expressed his innocence to the aggravated identity theft count, because he was confused about what the aggravated identity theft statute encompassed, and because he felt vulnerable after the District Court denied his second motion to substitute counsel. A valid guilty plea must be "knowing, voluntary, and intelligent." United States v. Tidwell, 521 F.3d 236, 251 (3d Cir. 2008). This "constitutional requirement" is "embodied in Federal Rule of Criminal Procedure 11," United States v. Schweitzer, 454 F.3d 197, 202 (3d Cir. 2006), which requires a district court to engage in a colloquy to "determine that the plea is voluntary." Fed. R. Crim. P. 11(b)(2).

The record here reveals that the District Court's colloquy adequately complied with Rule 11, and that Caban's plea was knowing, voluntary, and intelligent. The District Court advised Caban of all of his pertinent rights, including his right to go to trial, his right to counsel, and the presumption of innocence, and informed Caban that he would be waiving all of these rights, and others, upon pleading guilty. Caban acknowledged his rights and their waiver. The District Court specifically found that Caban was "fully alert, competent, and capable of entering an informed plea," and that his plea was "knowing and voluntary." Appendix ("App.") 76-77. Caban's disappointment at the District Court's proper decision to deny his request for new counsel did not make his plea less than voluntary.

The District Court also advised Caban of the elements of all of the crimes he was charged with committing and the factual basis for his guilt. It is true that Caban had

7

maintained his innocence on the charge of aggravated identity theft earlier in the proceedings because he thought that stealing credit card numbers did not amount to identity theft. Upon hearing Caban profess his innocence, the District Court initially refused to entertain Caban's guilty plea. Caban, however, appears to have changed his mind after the Government explained that one's credit card number was a form of identity under federal law, and Caban had time to discuss the matter with his attorney during a recess prior to entering his guilty plea. Because Caban did not ever deny his role in obtaining others' credit card numbers, it can easily be inferred that once the contours of the law were explained to him, he realized that he indeed had violated the statute (which he readily confirmed in the Rule 11 colloquy).

## C.

Next, Caban argues that the application of a two-level enhancement under the advisory Guidelines for being a leader or organizer of the conspiracy at sentencing was in error because the scheme was initiated by the Government and only involved a small number of participants. In considering whether this enhancement applies, courts consider a number of factors, including "the degree of participation in planning or organizing the offense" and "the nature of participation in the commission of the offense." U.S.S.G. § 3B1.1, comment 4. Whether an individual is a leader, organizer, manager, or supervisor within the meaning of § 3B1.1(c) of the advisory sentencing Guidelines is a factual question that we review for clear error. United States v. Barrie, 267 F.3d 220, 223 (3d Cir. 2001).

8

The District Court made no clear error. Caban supplied both the undercover officer and at least one other co-conspirator with a credit card skimmer. He instructed them on how to use the skimmer, when to return it, and which credit cards to target (he preferred American Express). He was in possession of the laptop computer and the software necessary to encode new cards with the stolen cards' numbers. Even though the scheme was small, he was undoubtedly one of its leaders and exercised supervisory authority over those doing the credit card skimming.

D.

Finally, Caban argues that his sentence was procedurally unreasonable because the District Court varied upward without adequately explaining its reasons. A district court must consider the factors enumerated in 18 U.S.C. § 3553(a) and then "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Gall v. United States, 552 U.S. 38, 50 (2007). "In some cases, a brief statement of reasons can be legally sufficient." United States v. Merced, 603 F.3d 203, 215 (3d Cir. 2010) (quotation marks omitted). The given explanation must suffice to show that the sentencing court "has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." Rita v. United States, 551 U.S. 338, 356 (2007). We review the procedural reasonableness of a sentence for abuse of discretion.

The main issue at sentencing was whether the six-level enhancement for a loss amount greater than $30,000 applied. Application of this enhancement would have set Caban's advisory Guideline range at 33 to 41 months of imprisonment. After extensive

9

argument, the District Court held that it did not apply. This reduced Caban's advisory Guideline range to 15 to 21 months. The Government argued at length for an upward variance, contending that the actual loss was only about $3,500 because the Government was able to detect quickly and put an end to Caban's intended "larger scheme." App. 125. It argued that "he was starting an operation to do this and he had the equipment and the devices to do this in an expansive way." Id.

The District Court accepted the Government's argument, varied upward, and imposed 41 months of imprisonment, which coincided with the top end of the rejected Guideline range. It thought a more severe sentence was appropriate "given the frequency and extent of the transgressions, the many, many credit cards, and the many, many credit card holders whose financial well-being was put at risk by this defendant." App. 132. It also noted that Caban's background and criminal history, which involved a host of crimes involving theft, forgery and access device fraud, warranted an upward variance in order to "impress upon him the seriousness of the offense that brings him before the court," as well as to protect the public from potential future crimes. Id. Although the District Court's explanation was brief, it was clear. Further explanation could have set out the court's rationale in greater detail, but the explanation given reveals exactly why the court varied upward and was not an abuse of discretion.

Caban also argues that his sentence was substantively unreasonable. A sentence is substantively unreasonable "if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the

10

facts of the case." United States v. Tomko, 562 F.3d 558, 579 (3d Cir. 2009) (en banc) (quotation marks omitted). "We may not reverse the district court simply because we would have imposed a different sentence." United States v. Wise, 515 F.3d 207, 218 (3d Cir. 2008). Here, we cannot say that "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." Tomko, 562 F.3d at 568. The District Court's sentence was driven by its conclusion that the harm that Caban intended was much greater than he was actually able to commit, and that he had a long record of committing similar crimes. In these circumstances, its ultimate sentence was not an abuse of discretion.

IV.

We have considered Caban's remaining arguments and find them without merit. For the foregoing reasons, we will affirm Caban's judgment of conviction and sentence.